Melvin SHAW, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. C14–91–00672–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 7, 1993.

Rehearing Denied Jan. 28, 1993.

Discretionary Review Denied
April 21, 1993.

---

Gregory L. Donnell, Houston, for appellant.

Mary Peter Cudd, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

A jury found appellant guilty of burglary of a building and assessed his punishment at ninety-nine years confinement. In two points of error appellant argues that identification evidence elicited from the state's chief witness should have been excluded, and that the trial court erred in ordering appellant to be bound and gagged in the view of the jury during the punishment phase of the trial. We overrule appellant's first point of error concerning the identification evidence; sustain his second point of error regarding the gag order; and remand for a new trial as to punishment only.

On August 8, 1990, Donna Shillingburg, an employee of Wright's Drive–In Grocery in Damon, Texas, arrived at work at about

5:45 a.m. As she entered the parking lot, she observed an unfamiliar car parked beside the store, and as she parked her car, she saw a man sitting in the driver's seat. She then saw appellant and another man exiting the grocery store carrying trash-cans filled with cartons of cigarettes, which they placed in the trunk of the car. At one point, appellant looked at Ms. Shillingburg, and then, upon realizing her presence, emphatically suggested to his companions that they leave the premises. Ms. Shillingburg promptly returned to her home, where her husband called the police. Later that day, Ms. Shillingburg gave a description of appellant to the sheriff's department, from which a composite was made. Twenty-two days later she identified appellant in a photographic line-up. She subsequently made a positive identification of appellant on two other occasions: a pre-trial lineup and in court at appellant's trial.

In his first point of error, appellant contends that the trial court erred in not suppressing the pre-trial and trial identification of appellant as the person who committed the offense. Appellant asserts that these identifications were tainted because Ms. Shillingburg's initial identification of appellant in the photographic lineup was the result of suggestion. Appellant's argument is unclear with regard to exactly what he maintains is suggestive about the photographic lineup. However, we were able to glean that the thrust of appellant's complaint is that his picture appeared lighter in color and appearance than did the other pictures included in the initial photo spread identification. The record reveals that the Brazoria County Sheriff's office did not have a picture of appellant on file. Therefore, one was obtained from the Houston Police Department. Testimony at trial showed that the color of the background used in photographing suspects in Brazoria County was different than that used in Houston. It was established that the background used in Houston was blue, while the background used in Brazoria County was red. Officer Phillips of the Brazoria County Sheriff's department testified that when the photographs were enlarged in order to make all the photographs

in the lineup the same size, the red background darkened and the blue background became lighter. Appellant argues that since his picture, although the same size as the others, was somewhat lighter in appearance, suggestiveness in identification occurred, and therefore the two subsequent identifications should have been suppressed. We disagree.

The United States Supreme Court has found that it is not necessary to suppress a pre-trial identification if it is established that the identification was reliable and that it did not present a substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The court established the following factors to be considered in determining identification reliability: the witness's opportunity to view the criminal at the time of the crime; the degree of attention paid by the witness at the time of the crime; the accuracy of the witness's prior description; the level of certainty in the identification, and; length of time between the crime and identification. *Id.* at 114–117, 97 S.Ct. at 2253–2254. Basically, it must first be shown that the identification procedure was suggestive, and, if so, then subsequent identifications must be independently reliable as measured by these factors.

■ We are hard-pressed to discern how the difference in shades of background color between the pictures contributed to alleged suggestiveness in the identification. The pictures were all the same size and displayed the faces of several different black men with similar characteristics. However, even if the background color increased the likelihood of suggestiveness, this alone does not render the later identifications unreliable. Applying the *Manson* factors, we find considerable evidence in the record that: Ms. Shillingburg had ample opportunity to observe appellant's face during the commission of the crime; she was wide awake and alert; her description of appellant was consistent with her later identification of him; she was confident in her identification, and; the amount of time which passed between when she first identified appellant, and the later identifica-

tions, was not so substantial as to make the identification unreliable. We find no realistic basis for reversing the trial court's decision to allow the pre-trial identification of appellant.

█ Appellant also argues that the in-court identification by Ms. Shillingburg is unreliable because she viewed appellant at defense counsel table prior to making the identification. However, Ms. Shillingburg testified that her identification of appellant was not the result of her seeing him immediately prior to trial, but that she remembered him as the man she saw robbing the store. Without substantial evidence that her recognition was influenced by seeing appellant at the defendant's table before the trial started, we cannot find reversible error. Accordingly, point one is overruled.

Appellant's second point of error concerns the action of the trial judge in ordering that the appellant be bound and gagged in plain view of the jury during the punishment phase of the trial. Appellant argues that such action had a definite prejudicial effect on the jury and their determination of the appellant's length of punishment. In fact, the trial judge acknowledged that if he had appellant bound and gagged, the jury would perceive appellant as a dangerous man immediately before they retired. The jury returned a ninety-nine year sentence. Even after considering the appellant's prior criminal record, we find this sentence somewhat on the severe end of the spectrum for stealing cartons of cigarettes from a grocery store. The State, however, urges us to defer to the trial court's discretion in maintaining good order and decorum in his courtroom. Obviously we agree that the trial judge has considerable leeway to insure the sanctity and order of the judicial process, but we do find the actions taken here were somewhat over-reactive as a preventative measure.

The record reflects that shortly before the prosecutor's closing statement during the punishment portion of the trial, appellant asked permission to speak on his behalf. The court denied this request. Statements by the trial court in pronouncing the gag order indicate that appellant was speaking loudly to his attorney during the state's jury argument, after having been denied an opportunity to speak. Unfortunately, such loud murmurings are incapable of being transcribed by the court reporter, and are therefore not depicted in the statement of facts. All that is present is an entry by the court reporter where the judge requested order in the court at some point during the State's closing argument. Soon after this request, and during the prosecutor's argument the following colloquy took place:

DEFENDANT: I would like to object to that testimony there, your honor. I was not sentenced—

COURT: Will the jury set [sic] back, please, for just a moment.

DEFENDANT: —for no burglary. I was sentenced to a felony theft. I never pleaded true to no burglary of no building in 1978.

(Whereupon, the following proceedings were held outside the presence and hearing of the jury.)

COURT: All right. Mr. Shaw, let's have an understanding here. Listen to me.

DEFENDANT: I brought—

COURT: I'm asking you to listen to me, and I'm telling you what is going to happen.

DEFENDANT: You've already denied me due process of law, sir.

COURT: *Get the duct tape out.* We need the duct tape and something to bind him with. Listen to me now. Get the bailiff, get the duct tape and something to bind him with. (emphasis added)

All right. Listen to me now. I have only had to do this one time in many years on the bench. But I guarantee you are according that. We are going to have order. You are not entitled to bifurcated representation. You are entitled to be represented at this point through your attorney, and I have asked you kindly to please speak through your attorney. What I'm referring to, what I may have to do is have you bound and gagged in the presence of the jury.

DEFENDANT: I asked kindly to speak to you.

COURT: Listen to me.

DEFENDANT: I sure did.

COURT: We will have order, and you will not delay this trial. I've had to do it in this very county. It was upheld on appeal. The jury is going to sit there and see you bound and gagged before them, and they are going to determine you are dangerous person right before they go out and determine whether to give you life. Do you really think that's an intelligent thing to do?

DEFENDANT: Do you think what you are doing is an intelligent thing to do?

COURT: I'm not going to discuss it any further with you. If you will conduct yourself as a gentleman, we will proceed. Otherwise we will get the tape and have you bound.

DEFENDANT: I've been trying. I've been trying. I brought a matter to your attention Monday morning, and you disregarded it.

COURT: Let's get the tape. We will stay in adjournment until we get it.
(Whereupon, court remained in adjournment. At which time the Defendant was bound and gagged.)

In its brief the State argues that such restraint was necessary and proper under the circumstances. The State refers us primarily to the cases of *Culverhouse v. State* and *Kimithi v. State*. *Culverhouse v. State*, 755 S.W.2d 856 (Tex.Crim.App. 1988); *Kimithi v. State*, 546 S.W.2d 323 (Tex.Crim.App.1977). We find that both of these cases are greatly distinguishable from the present case on their facts. In *Culverhouse*, the defendant was restrained in leg irons, handcuffs, and a "belly-band" during the entirety of his trial. The trial court in that case specifically noted in the record that the decision to restrain the defendant during trial was based upon proof that he was extremely dangerous. Specifically, the defendant had merely two weeks earlier in the same case, but different venue, attacked his court-appointed attorney in the courtroom, cracking the attorney's cheekbone and breaking his nose. This was witnessed personally by the sitting judge. Furthermore, that defendant was on trial for attempted murder with a firearm of a grocery store employee, and murder of the employee's girlfriend with a machine gun. There was also other evidence of defendant's dangerous disposition. *Culverhouse* at 857–58. Likewise, in *Kimithi*, restraint of the defendant was employed only after numerous interruptions and outbursts. In that case, defendant repeatedly requested the court to excuse him from participation in the trial. On two separate occasions the defendant requested medical attention, clearly for the purposes of delay, but which were nonetheless patiently provided by the trial court. Only after numerous subsequent outbursts by defendant alleging racial discrimination, the demand to be tried by the United Nations, and ordering the disqualification of the judge, did the trial court finally order the restraint of the defendant. *Kimithi* at 324–26. The State's argument that the judge in the present case exercised the same amount of patience with appellant simply does not hold water.

█ It is elementary that one of the most precious rights afforded an accused is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. Intimately interwoven into those rights is the proposition that no accused should ever be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of "exceptional circumstances" or a "manifest need" for such restraints. *Gray v. State*, 99 Tex. Crim.R. 305, 268 S.W. 941 (1924). By ordering the use of such restraints, the jury may infer that the trial judge has expressed the opinion that the accused is a dangerous person and is not to be trusted. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

█ While we recognize that in certain extreme circumstances restraint of defendants during trial may be justified, such actions have generally been limited to situations in which an accused has expressed

his intention to escape, has made threats of physical violence, has resisted being brought to court, has repeatedly interrupted the court proceedings, has attempted to leave the courtroom, or other egregious conduct. *See Morris v. State*, 382 S.W.2d 259 (Tex.Crim.App.1964); *Kimithi v. State*, supra; *Moore v. State*, 535 S.W.2d 357 (Tex.Crim.App.1976); *Burks v. State*, 792 S.W.2d 835 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The record is devoid of that here. While a cold recitation of the trial proceedings does not afford us an opportunity to experience for ourselves the inflection of the dialogue between appellant and the court, nor does it show us the non-verbal context in which these discussions were made, the record still fails to adequately present any extreme conduct on appellant's part that warrants the use of physical restraints in the jury's presence. Even from our appellate perch, we acknowledge that the patience of the trial judge is often pushed to the limit, however, judicial patience is part of the job and such extreme methods as binding and gagging should only be imposed after clear warnings to the defendant and as a last resort. We find the actions premature and unwarranted here.

■ The State contends that regardless of the propriety of the gag order, no harm resulted from the conduct of the trial judge when he placed appellant under restraints. We disagree. As already noted, implicit in the conduct of a fair trial is the idea that one is innocent until proven guilty. Although guilt had already been determined and the events in question occurred during the punishment portion of the trial, appellant's rights were no less important. The cases precluding physical restraints during the guilt-innocence part of a trial are applicable to the punishment phase as well, when punishment is assessed by a jury. The basic rationale for the rule is equally applicable in both phases of a trial. This is especially true in the present case. Although appellant did have a prior felony record, it is difficult to see how the binding and gagging of appellant did not influence the jury in assessing a sentence of ninety-nine years for burglary involving a large quantity of cigarettes. While it is true that this verdict was within the appropriate range of punishment in light of appellant's record, it is almost the maximum penalty allowed (the maximum being a life sentence.) We therefore find that the trial court abused its discretion in issuing the gag order. We cannot find beyond a reasonable doubt that the error made no contribution to the punishment assessed. We must accordingly reverse and remand this case to the trial court.

■ It is not necessary to remand the entire case because the error occurred only during the punishment phase of the trial. Guilt had already been determined before any of the prejudicial events took place. Accordingly, when a new trial is granted only on the basis of an error made during the punishment stage of the trial, then only that part of the verdict need be retried. TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon's Supp.1992). Therefore, we affirm the conviction; point of error one is overruled; and point of error two is sustained, with the punishment portion of the case remanded to the trial court for further proceedings in accordance with this opinion.