Felix RAMIREZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–01–00488–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 28, 2002.

J. Sidney Crowley, Houston, for appellants.

Carmen Castillo Mitchell, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## MAJORITY OPINION

J. HARVEY HUDSON, Justice.

Appellant, Felix Ramirez, Jr., was convicted by a jury of the offense of capital murder. The State did not seek the death penalty, and appellant was sentenced to life imprisonment. In four points of error, appellant contends: (1) the trial court erred in overruling his motion to suppress confessions obtained in violation of his right to counsel; (2) the trial court erred in overruling his motion to suppress confessions that were the product of improper inducement; (3) he was denied the effective assistance of counsel; and (4) he was denied his constitutional right to be present at trial. We affirm.

On the night of June 3, 2000, appellant and Maria Cervantes returned to the latter's home after attending a party. After dismissing the babysitter, Ms. Cervantes put her two-and-a-half year old son, Alberto Mata III, to bed. Sometime during the night, however, the child awoke and began crying. Appellant got out of bed to tend to the child, but his ministrations proved fatal: examination later showed Alberto had fractured ribs and a ruptured heart.

The next morning, appellant left the house without awakening Ms. Cervantes, who only discovered the lifeless body of her son some forty-five minutes after appellant's departure. Paramedics were alerted, but could do nothing. Thereafter, Detective Rymer of the Baytown Police Department learned of appellant's presence in the house during the night and, finding him at his mother's residence, asked him to come to the police station for questioning. Appellant did so voluntarily, at which time Detective Rymer read appellant his statutory rights. Because appellant declined to answer questions without his attorney present, Detective Rymer ceased the questioning and checked appellant for outstanding warrants. Finding that appellant had an open warrant for a traffic offense, Detective Rymer placed him in Baytown jail.

The following morning, June 5, 2000, appellant purportedly informed a jailer that he wished to speak with Detective Rymer. The jailer contacted the detective's partner, who then informed Detective Rymer of appellant's request. Upon arriving at the station, Detective Rymer asked appellant whether he wanted to speak to him. Appellant answered in the affirmative, and Detective Rymer again read appellant his statutory rights. Appellant initialed each warning and signed the document detailing his rights. He did not request an attorney. At that time, in a videotaped interview, appellant stated he had not had any dealings with Alberto.

Detective Rymer then requested that Detective Craft, who was in charge of the investigation, to interview appellant. In a videotaped interview, Detective Craft read appellant his statutory warnings, after

which appellant voluntarily waived his rights and gave a written statement. Appellant initialed both the warnings and the statement; the latter document noted that appellant waived his right to have a lawyer present to advise him prior to or during any questioning. Following the autopsy of Alberto, Detective Craft confronted appellant with inconsistencies in this statement, whereupon, after another set of statutory warnings, appellant provided a second statement. In this second statement, appellant admitted that he struck Alberto with a closed fist to the chest when the child would not stop crying. Recognizing that the blow had proven fatal, appellant crumbled some crackers and placed them in Alberto's mouth so it would appear the child had choked to death, before returning to bed.

Appellant filed a pretrial motion to suppress these written confessions, contending they were made after he had invoked his right to counsel and were thus taken in violation of his Sixth Amendment rights. The trial court held a hearing outside the presence of the jury, at which appellant testified he was compelled to sign the confessions only because he felt his chances of obtaining an attorney were slim, and denied ever telling anyone that he did not wish to have an attorney. At the conclusion of the hearing, the trial court found that appellant was not in custody or under arrest for this offense when he made the written statements and that they were freely and voluntarily given. Moreover, the trial court found that appellant freely and voluntarily waived his rights, that he was not threatened in any way, and that he was not made any promises or deprived of any food or drink while at the police station. Accordingly, the trial court denied appellant's motion to suppress.

In his first point of error, appellant contends the trial court erred in overruling his motion to suppress the written confessions in violation of his right to counsel under both the Fifth and Sixth Amendments of the United States Constitution. Specifically, appellant avers he did not request to meet with Detective Rymer while incarcerated. Thus, he contends the State did not carry its burden of showing that he had initiated contact and waived his right to counsel.

Once an accused invokes his right to counsel, interrogation must cease until counsel has been made available, unless the accused himself initiates further communication. *Minnick v. Mississippi*, 498 U.S. 146, 151–52, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (reiterating *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)); *Muniz v. State*, 851 S.W.2d 238, 252 (Tex.Crim.App.1993). This rule seeks to assure " 'that any statement made in a subsequent interrogation is not the result of coercive pressures.' " *Id.* (quoting *Minnick*, 498 U.S. at 149–50, 111 S.Ct. 486). An accused may, however, waive the Fifth Amendment right to counsel even after having already invoked it. *Id.* (citing *Minnick*, 498 U.S. at 154–56, 111 S.Ct. 486).

To establish waiver, the State must demonstrate that appellant intentionally relinquished a right of which he was aware. *Muniz*, 851 S.W.2d at 253. Whether a waiver is shown "must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

Here, the record contains conflicting evidence regarding whether appellant initiated further contact with the police. In a suppression hearing, however, the trial court is the sole trier of fact and

judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim.App.2000) (citing *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999)). Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted, "because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id.* (citations omitted). Thus, where, as here, the evidence is conflicting, we must defer to the fact-finding ability of the trial court.

■■■ "Unlike the Fifth Amendment right to counsel, the Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial proceedings against the defendant,'" whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Green v. State,* 934 S.W.2d 92, 97 (Tex.Crim.App.1996) (quoting *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)); *Green v. State,* 872 S.W.2d 717, 719 (Tex. Crim.App.1994). The right is specific to the offense. *McNeil v. Wisconsin,* 501 U.S. 171, 175–76, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Janecka v. State,* 937 S.W.2d 456, 466 (Tex.Crim.App.1997). In the instant case, appellant had neither been arrested nor charged with Alberto's murder, and adversarial proceedings had not commenced when he made the statements with which we are here concerned. Accordingly, appellant's Sixth Amendment right to counsel had not attached when he gave the statements, and thus the trial court did not err in their admission. *See McFarland v. State,* 928 S.W.2d 482, 507 (Tex.Crim.App.1996), *overruled on other grounds by, Mosley v. State,* 983 S.W.2d

249, 263 (Tex.Crim.App.1998). Appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court erred in overruling his motion to suppress the written confessions, because they were the product of improper inducement. Specifically, appellant complains Detective Craft impliedly promised that if he confessed, he would be treated more favorably. Appellant contends these assurances rendered appellant's statements involuntary.

■■■ Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession. *Muniz,* 851 S.W.2d at 254; *Jacobs v. State,* 787 S.W.2d 397, 399 (Tex.Crim.App.1990). In order to induce the confession, the promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that a defendant would speak untruthfully in response thereto. *Muniz,* 851 S.W.2d at 254. Moreover, the statements must not have been " 'obtained by the influence of hope or fear, applied by a third person to the prisoner's mind.' " *Creager v. State,* 952 S.W.2d 852, 856 (Tex.Crim.App.1997) (quoting *Cain v. State,* 18 Tex. 387, 390 (Tex.1857)). The ultimate question is whether appellant's will was overborne. *Id.* (citing *Armstrong v. State,* 718 S.W.2d 686, 693 (Tex.Crim.App.1985)).

■■■ Regarding the discussion about leniency, the record shows Detective Craft stated that in his experience "typically juries and the court system sometimes favor people [who] tell the truth." This was simply a statement of opinion. Appellant has failed to demonstrate that the party in authority positively and unequivocally promised leniency in return for a confession. *Muniz,* 851 S.W.2d at 254. Accordingly, as Detective Craft's conversation about leniency fails to rise to the level of a promise, the trial court did not err in

denying appellant's motion to suppress. Appellant's second point of error is overruled.

In his third point of error, appellant contends he was deprived of the effective assistance of counsel when his attorney failed to request an instruction on the legality of his confession.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1977). The right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court has established a two-prong test to determine whether counsel is ineffective. *Id.* Appellant must first demonstrate his counsel's performance was deficient and not reasonably effective. *Id.* at 688–92, 104 S.Ct. 2052. Thereafter, appellant must demonstrate the deficient performance prejudiced his defense. *Id.* at 693, 104 S.Ct. 2052. Essentially, appellant must show that his counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.; Valencia v. State,* 946 S.W.2d 81, 83 (Tex. Crim.App.1997).

Judicial scrutiny of counsel's performance must be highly deferential and we are to indulge the strong presumption that counsel was effective. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). We assume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id.* Moreover, it is appellant's burden to rebut this presumption, by a preponderance of the evidence, via evidence illustrating why trial counsel did what he did. *Id.* Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland,* 928 S.W.2d at 500.

If appellant proves his counsel's representation fell below an objective standard of reasonableness, he must still affirmatively prove prejudice as a result of those acts or omissions. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052; *McFarland,* 928 S.W.2d at 500. Counsel's errors, even if professionally unreasonable, do not warrant setting the conviction aside if the errors had no effect on the judgment. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. *McFarland,* 928 S.W.2d at 500. If appellant fails to make the required showing of either deficient performance or prejudice, his claim fails. *Id.*

Article 38.23 of the Texas Code of Criminal Procedure provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002). Appellant asserts he

was entitled to such a charge because a factual dispute arose at trial as to whether, after he had requested an attorney, appellant initiated the interview with Detective Rymer, and that his attorney was ineffective for such omission.

▆▆▆▆ A trial court is required to include an Article 38.23 instruction "only if the trial evidence raised a factual issue concerning whether the evidence was obtained in violation of the federal constitution or the Texas Constitution or any of its laws." *Bell v. State*, 938 S.W.2d 35, 48 (Tex.Crim.App.1996); *see also Hamilton v. State*, 831 S.W.2d 326, 331 (Tex.Crim.App. 1992). In the instant case, Detective Rymer and appellant's jailer testified that appellant initiated the interview on June 5, 2000. Appellant, however, testified he made no such request to speak to Detective Rymer, that the detective visited his cell three times during his period of incarceration, and that he offered his first statement only after being "pulled out of the cell and escorted to the interrogation room" by the detective. Appellant's testimony thus raised a defensive issue, and the trial court would have been required to submit the issue to the jury had appellant's counsel properly requested an instruction. *See Muniz*, 851 S.W.2d at 254 (noting that the evidence which raises the issue "may be either strong, weak, contradicted, unimpeached, or unbelievable").

▆▆▆ Nonetheless, appellant did not file a motion for new trial and the record contains no evidence of the reasoning behind his trial counsel's actions in failing to request an Article 38.23 instruction. We cannot conclude, therefore, that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771–72; *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999) (holding that when the record provides no explanation as to the motivation behind trial counsel's actions, an appellate

court should be hesitant to declare ineffective assistance of counsel). An appellate court is not required to speculate on the reasons behind trial counsel's actions when confronted with a silent record. *Jackson*, 877 S.W.2d at 771. Appellant fails to provide this Court with any evidence to affirmatively demonstrate the ineffectiveness of his trial counsel. Thus, appellant has not satisfied his burden on appeal to rebut the presumption that counsel's actions were reasonably professional and motivated by sound trial strategy.

Moreover, even if the record rebutted the presumption of sound trial strategy, appellant has not demonstrated that trial counsel's performance prejudiced the defense. He has not, therefore, met the second prong of the test. Because appellant produced no evidence concerning trial counsel's reasons for choosing the course he did, nor did he demonstrate prejudice to his defense, his third point of error is overruled. *McFarland*, 928 S.W.2d at 500.

In his fourth point of error, appellant complains that he was denied his right under the Confrontation Clause of the Sixth Amendment to the United States Constitution to be present at trial when the court ordered him removed.

During the guilt/innocence phase of trial, at the conclusion of appellant's testimony, the trial court asked appellant to step down from the witness stand and resume his seat. Whereupon, the following exchange occurred:

> *THE DEFENDANT*: Your Honor—
>
> *THE COURT*: Have a seat next to your lawyer, please.
>
> *THE DEFENDANT*: What about the child abuse cases on Maria, her CPS and day care—
>
> *THE COURT*: Mr. Ramirez—take the jury out, please. Mr. Ramirez. Take him out.

*THE DEFENDANT:*—and police calls. What about all that? I think the jury should know. She's the one with the child abuse complaint.

After the jury was removed and order was restored, the trial judge recalled appellant:

*THE COURT:* If you want to remain in this courtroom during this trial, then you're going to have to be quiet and you're going to have to only answer the questions that you're allowed to answer. Do you understand me? Because I'll be more than happy to let you finish this trial sitting out in the holdover. You choose. Which one? Can you stay out here and behave yourself or do we need to set you up in the holdover where you can listen to the trial and not be here and be disruptive?

*THE DEFENDANT:* I was not being disruptive. The jury should know—

*THE COURT:* Set it up in the holdover. He's not coming back.

*(Defendant not present.)*

*THE COURT:* Mr. Tackett (appellant's counsel), would you like to go visit with him or should we determine that he has voluntarily absented himself from the trial?

*MR. TACKETT:* Could we put it on the record, Your Honor?

*THE COURT:* That he voluntarily absented himself?

*MR. TACKETT:* Yes, Your Honor.

*THE COURT:* You don't have any objections to him listening to it in there?

*MR. TACKETT:* No.

*THE COURT:* Okay.

Appellant remained absent from the courtroom throughout closing arguments, and was returned only after jury deliberations had been completed.

 A criminal defendant may lose his constitutional right to be present at trial if, "after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Trial judges confronted with "disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Id.* Where a defendant's behavior is of "an extreme and aggravated nature," that discretion encompasses expulsion from the courtroom. *Id.* at 346, 90 S.Ct. 1057.

Here, the record is somewhat vague regarding appellant's conduct in the courtroom. Looking solely at appellant's statements, it is difficult to characterize his conduct as being "extreme or aggravated." Moreover, the trial judge did not favor us with an explanation on the record regarding events that might otherwise remain unapparent from the cold record.

 As an appellate court, we are cognizant of the fact that we cannot discern the tone of appellant's remarks or his demeanor in the courtroom Moreover, it is apparent that a court reporter cannot accurately record simultaneous statements made by several persons. Here, the record reflects that appellant's counsel expressly stated he had no objection to excluding appellant from the courtroom. Where both the trial judge and appellant's counsel agree that appellant should be removed from the courtroom, we presume appellant's tone, volume, or demeanor must have been highly disruptive.

 What is clear in the record is that appellant insisted on "poisoning" the jury by attempting to inject alleged facts into the proceeding that were not in evidence. The trial judge had a duty to protect the

integrity of the trial. Despite being warned that he would be expelled from the courtroom if his behavior continued, appellant chose to insist his antics were not disruptive and failed to assure the trial court that he would remain quiet. As the trial court lacked reason to believe appellant's misbehavior would cease, appellant's expulsion was not constitutionally improper. *See Burks v. State*, 792 S.W.2d 835, 837 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd.) (holding a defendant's expulsion from the courtroom constitutionally permissible where he was "continuously non-responsive and disruptive").

Moreover, appellant would not prevail even if his misbehavior was not sufficiently egregious to warrant his removal from the courtroom. Appellant was excluded from the courtroom only during closing arguments in the guilt/innocence phase. If error, this deprivation was not a defect that permeated "[t]he entire conduct of the trial" or affected "the framework within which the trial proceed[ed]." *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Consequently, the question becomes one of harm. *Jasper*, 61 S.W.3d at 423; *see also Rushen v. Spain*, 464 U.S. 114, 117 n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (holding that "the right to be present during all critical stages of the proceedings" is "subject to harmless error analysis, unless the deprivation, by its very nature, cannot be harmless") (citations omitted). We need not reverse the trial court's judgment if we determine that appellant's exclusion did not contribute to his conviction or punishment. TEX.R.APP. P. 44.2(a); *Jasper*, 61 S.W.3d at 423.

Appellant had no active role left to play in the proceedings. Because only the closing arguments remained (and the subject of these arguments was necessarily restricted to the testimony already in evi-dence), counsel had no need to consult with appellant. Had appellant been present in the courtroom, he could only have listened passively to the arguments of counsel— something he had shown no inclination to do. Thus, any error in his exclusion was harmless beyond a reasonable doubt. Accordingly, appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.

KEM THOMPSON FROST, J. concurring.

KEM THOMPSON FROST, Justice, concurring.

I agree with the majority's analysis and disposition of appellant's first three points. I also agree with the majority's harm analysis under appellant's fourth point. However, I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion or violate appellant's constitutional rights when it removed appellant from the courtroom during his capital murder trial.

Appellant asserts he was denied his right under the Confrontation Clause of the Sixth Amendment to the United States Constitution to be present at trial when the court ordered him removed. In *Illinois v. Allen*, the United States Supreme Court held that a criminal defendant may lose his constitutional right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970). In *Allen*, the Court held that the trial court acted within its discretion and did not violate the defen-

dant's constitutional right to be present at trial, where the defendant's behavior "was clearly of such an extreme and aggravated nature as to justify either his removal from the courtroom or his total physical restraint." *Id.*, 397 U.S. at 346, 90 S.Ct. at 1062. In *Allen,* the trial court had repeatedly warned the defendant, prior to his removal, that he would be removed from the courtroom if he persisted in his unruly conduct. *Id.*

Appellant's behavior, as reflected in the record before us, was not of "such an extreme and aggravated nature" to warrant his expulsion from the courtroom. Nothing in the record approaches the level of disruptive, contumacious, defiant conduct necessary to justify the extraordinary action of removing a defendant from the courtroom during a capital murder trial. The majority's opinion sets forth in its entirety the exchange that served as the basis for the trial court's expulsion of appellant from the courtroom. That exchange does not justify the trial court's actions under the applicable standard. Examples of conduct found to be of an "extreme and aggravated nature" include: (1) repeatedly arguing with the trial court in an abusive manner and threatening to kill the trial judge, *Allen,* 397 U.S. at 339–40, 90 S.Ct. at 1059; (2) repeated, nonresponsive, profane, vulgar, and disruptive statements and behavior, *Burks v. State,* 792 S.W.2d 835, 836–37 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd); and (3) ignoring the trial court's warnings not to disrupt the proceedings and engaging in a violent scuffle with the bailiff. *Dotson v. State,* 785 S.W.2d 848, 853–54 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd). In each of these cases, there were multiple incidents of misconduct, followed by at least one warning, and then a clear failure of the defendant to heed the admonition. *See Allen,* 397 U.S. at 339–46, 90 S.Ct. at 1059–62; *Burks,* 792 S.W.2d at 836–37;

*Dotson,* 785 S.W.2d at 853–54. Research reveals no case in which a single outburst or act of misconduct warranted a defendant's expulsion from trial.

Here, appellant made one inappropriate outburst in front of the jury. Then, after the jury was removed, the trial court warned him that he "could only answer the questions you're allowed to answer." The court followed that admonishment with the inquiry, "Do you understand me?" Without waiting for a response, the trial court told appellant he could finish the trial "sitting in holdover" and then asked appellant if he could behave himself or if it would be necessary to "set [him] up in the holdover" where he could listen to the trial and not be present in the courtroom and "be disruptive." When appellant challenged the court's characterization, saying he "was not being disruptive" and attempted to offer an explanation, the trial court expelled appellant from the courtroom for the remainder of his capital murder trial. Curiously, the trial court and appellant's counsel then agreed on the record that appellant had "voluntarily absented himself" from the courtroom.

It almost seems as if we are missing a few pages from the trial transcript—pages containing other outbursts or a prior warning to cease disruptive behavior—but none exist, at least not in the record before us. The trial court acted as if the exchange that culminated in appellant's removal from the courtroom was the "straw that broke the camel's back;" yet, there is no other straw in sight—not even a hint of one. The majority, in tacit recognition that this case does not fit the pattern for constitutionally permissible expulsion, suggests various explanations, e.g. "a court reporter cannot accurately record simultaneous statements made by several persons" and the reviewing court "cannot discern the tone of appellant's remarks or his

demeanor in the courtroom." These statements are true, and they are part of the reason trial courts have discretion to deal with stubbornly disruptive defendants. However, in determining whether the trial court abused its discretion, these considerations do not create evidence in the record to justify appellant's swift and sudden expulsion from the courtroom during his capital murder trial.

The majority speculates that "appellant's tone, volume, or demeanor must have been highly disruptive" based on the fact that "both the trial judge and appellant's counsel agree[d] that appellant should be removed from the courtroom." When, as here, the record is silent, we may not supplement it with conjecture about what else might have transpired off the record that would have warranted the trial court's action, for example, appellant engaging in conduct that was disruptive or contumacious and receiving warnings to stop. Doing so would leave to the imagination of the reviewing court whatever "facts" may be needed to support the trial court's action. Although a reviewing court may make logical deductions from matters in the record, it may not make logical deductions from matters *not* in the record. It is a simple and unforgiving rule of appellate review that we may not decide cases based on speculation or conjecture about matters not shown in the record. *See Green v. State,* 912 S.W.2d 189, 192 (Tex.Crim.App.1995).

The record in this case does not contain evidence of any other misconduct or statements that might have justified the trial court's action. The record before this court shows only the following: (1) appellant made one improper statement in front of the jury; (2) outside the presence of the jury, the trial court asked multiple questions of the appellant; and (3) after appellant spoke nine words in an attempt to respond to the trial court's questions, the trial court interrupted appellant and summarily ordered him removed from the courtroom without prior admonition or an opportunity to comply. On this record, the trial court abused its discretion and violated appellant's constitutional rights when it ordered appellant removed from the courtroom during his capital murder trial. *See Shaw v. State,* 846 S.W.2d 482, 485–87 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) (holding that trial court abused its discretion and violated appellant's constitutional rights when it prematurely physically restrained appellant, even though appellant had not engaged in extreme misconduct).

In this country all citizens put on trial have the right to be present for trial. *See Allen,* 397 U.S. at 339–46, 90 S.Ct. at 1058–62. This right extends even to those accused of the unthinkable, such as the brutal murder of a toddler. Though the trial court has considerable discretion to deal with disruptive, contumacious, and stubbornly defiant defendants, the record in this case shows an abuse of that discretion when the trial court deprived appellant of his constitutional right to be present at trial with no previous warning and without conduct by appellant that was so disorderly, disruptive, and disrespectful of the court that the trial could not be carried on with him in the courtroom. *See Allen,* 397 U.S. at 342–43, 90 S.Ct. at 1060–61; *Shaw,* 846 S.W.2d at 485–87.

Although it was constitutional error to remove appellant from the courtroom during part of the trial, this error was harmless. *See Jasper v. State,* 61 S.W.3d 413, 422–24 (Tex.Crim.App.2001) (holding that trial court committed constitutional error by conducting part of trial without appellant in courtroom but that error was harmless beyond a reasonable doubt). For reasons stated in the majority's harm

analysis, the trial court's expulsion of appellant from the courtroom did not contribute to appellant's conviction or punishment. Consequently, this error was harmless beyond a reasonable doubt, and provides no grounds for reversal.