Affirmed in Part and Reversed and Remanded in Part and Opinion filed
July 27, 2004









Affirmed in Part and Reversed and Remanded in Part and
Opinion filed July 27, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00271-CR

____________

 

BRYAN
KESSEL, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

_______________________________________________________

 

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 917,988

_______________________________________________________

 

O P I N I O N

In this case, we must determine
if the trial court erred in ordering the defendant removed from the courtroom
and taken back to the jail, causing him to miss the entire punishment phase of
his jury trial.  We find reversible
error, affirm the conviction, and reverse and remand for a new punishment
hearing.  








I.  Factual and
Procedural Background

Appellant Bryan Kessel was
charged by indictment with burglary.  He
pleaded not guilty, but the jury found him guilty.  The next morning, before the punishment phase
began, the parties appeared before the trial court.  The record reflects the following:

[Trial
Court]:                          Both sides ready?

[Prosecutor]:                         The State is ready.

[Appellant=s counsel]:           Just for the record.

[Trial
Court]                           We=re outside the presence of
the jury.  Yes.  Lets [sic] make a record.  We=re outside the presence of
the jury.

[Appellant=s counsel]:           Judge, at this time we have tried to
communicate with Mr. Kessel, and he is nonresponsive.  He appears to be, um C

[Trial
Court]:                          He is slumped over in his chair.

[Appellant=s counsel]:           He is slumped over in his chair,
uncommunicative, and we object to proceeding on the grounds of the 6th and 14th
and 5th, 6th and 14th Amendment [sic] to the United States Constitution and the
corresponding Texas amendments.

[Trial
Court]:                          All right.  Let the record reflect that I have heard
numerous reports to explain Mr. Kessel=s appearance before me
right now.  He was wheeled into the
courtroom by a deputy sheriff.  When
instructed by the deputy sheriff to get out of the wheelchair to get into the
chair, he was certainly able to stand up to move himself from this wheelchair
to the chair, which led the Court to believe that he, one, understood the
request by the Sheriff=s Department, secondly,
was able to carry it out.

Deputy Holden is a
lieutenant with the Sheriff=s Department.

[Lieutenant
Holden]:             Yes,
Your Honor.








[Trial
Court]:                          Would you say you have the most
understanding of what has transpired with Mr. Kessel to [sic] the people of the
courtroom?

[Lieutenant
Holden]:             Of
the people in this courtroom, yes, sir.

[Trial
Court]:                          What=s your understanding of
what has transpired as to him?

[Lieutenant
Holden]:             That
because [sic] his late return from court yesterday he didn=t get his medication until
later in the day.  And at that point an
effect took place on his body from the medication.  He was alert earlier, he followed directions.

[Trial
Court]:                          Earlier.  You mean earlier today?

[Lieutenant
Holden]:             Earlier
within the last half hour.

[Trial
Court]:                          Where was that?

[Lieutenant
Holden]:             Down
at the holding area, classification.  He
was given directions, followed those directions.  He was taken to the dressing area.  He dressed himself.

[Trial
Court]:                          Standing?

[Lieutenant
Holden]:             Standing.  He would lean at times, but standing, but
because of the tremors we put him in a chair. 
Just now when I brought him into the courtroom I gave him directions, he
stood, turned, sat in his chair.  He did
understand, followed the directions that I gave him.  

[Trial
Court]:                          Let there be no doubt that Mr.
Kessel=s appearance before me
right now, it=s markedly different than
the appearance he has had before the jury for the last three days.  There is no doubt in my mind, based upon what
I have been told this morning by Lieutenant Holden, this is the first time
Lieutenant Holden and I have talked about this, but other deputies have been
relaying information to me about the behavior, and I was told earlier that he
had removed his classification badge.

[Lieutenant
Holden]:             Yes.








[Trial
Court]:                          Had to be taken to classification to
be rebanded.

[Lieutenant
Holden]:             Yes,
Your Honor.

[Trial
Court]:                          There is no doubt in my mind this
was nothing more than an attempt by Mr. Kessel to delay, impede, and perhaps
prohibit the conclusion of this trial this morning.  It=s consistent with his
behavior during the facts of this case when he was arrested.  It is consistent with his behavior in
numerous appearances before me when we had conversations, and I=m absolutely convinced
this is nothing more than an attempt on his part to inhibit and perhaps
prohibit the conclusion of this trial today. 


The Court is of the
opinion that his refusal to speak to his lawyers is nothing more than an
attempt on his part to somehow sabotage the punishment phase of this
trial.  He has been able to respond to
requests by the Sheriff=s Department, so he is
capable of hearing requests and commands and following those requests and
commands appropriately.

Mr. Kessel, can you hear
me right now?

All right.  He has raised his head.  He is not responding but he appears to the
Court to be able to hear me right now. 
The Court is of the opinion that Mr. Kessel=s current behavior and
appearance is nothing more than a blatantly conscious attempt on his part to,
one, if he cannot sabotage the punishment phase of the trial is [sic] to
perhaps somehow incur some sort of sympathy from this jury as a result of his
appearance and so C and since he intends not
to communicate with his lawyers I=m going to order him
removed from the courtroom for this punishment phase of the trial.  You can remove him from the courtroom and
take him back to the holdover.








[Appellant=s counsel]:           And, Judge, we would object to the
same, same basis, because our understanding is that there is a medical basis
and it would be difficult to determine exactly whether or not his current
demeanor and attitude is a result of his seizure disorder or a result of
faking.

[Trial
Court]:                          All right.  Your objection is denied.

[Appellant=s counsel]:           Thank you.

[Bailiff]:                                 Are we to
return him to the holdover in the back or the holdover in the jail in the jail
which [sic] he is housed?

[Trial
Court]:                          Take him C take him back period.

[Bailiff]:                                 Until he can
return to his housing?

[Trial
Court]:                          Return to his house.

. . .

(Defendant removed)

. . . 

(Open court, no defendant,
jury present).

[Trial
Court                            Members
of the jury, Mr. Kessel is not going to be present in the courtroom during this
punishment phase of trial.  That is a
decision that I have made for reasons known to me that are of no consequence
and not to be considered by you during this stage of the trial.  I have made the decision he is not going to
be present, so I have ordered him to be removed from the courtroom.

In accordance with the trial
court=s order
removing appellant from the courtroom, appellant was absent from the courtroom
for the entire punishment phase of the trial. Appellant had pleaded not true to
enhancement paragraphs alleging two prior burglary convictions.  The jury found the allegations in both of the
enhancement paragraphs to be true and assessed punishment at fifty-five years=
imprisonment in the Texas Department of Criminal Justice C
Institutional Division.  The entire
punishment phase of the trial took place on February 27, 2003, and the record
shows that the jury never saw appellant in the courtroom at any time on that
day.  The next day, the trial court had
appellant brought back to the courtroom for imposition of the sentence.  








II.  Standard
of Review

In determining whether the trial
court abused its discretion, we consider whether the court acted without
reference to guiding rules and principles C that is,
whether the court acted arbitrarily or unreasonably.  Lyles v. State, 850 S.W.2d 497, 502
(Tex. Crim. App. 1993).  We must uphold
the trial court=s ruling
so long as it is Awithin
the zone of reasonable disagreement.@  Wheeler v. State, 67 S.W.3d 879, 888 (Tex.
Crim. App. 2002).

III.  Issue and
Analysis

In his second issue, appellant
complains[1]
that, by ordering him removed from the courtroom during the punishment phase,
the trial court violated his right to be present in the courtroom under the
Confrontation Clause of the Sixth and Fourteenth Amendments to the United
States Constitution, under Article I, Section 10 of the Texas Constitution, and
under article 33.03 of the Texas Code of Criminal Procedure.[2]  Appellant=s trial
counsel also objected in the trial court that the punishment phase should not
proceed at that time based on appellant=s
condition and his inability to communicate with his counsel.  On appeal, however, appellant does not assert
that the trial court erred in proceeding while he was incapacitated; rather,
appellant complains that the trial court erred by ordering him removed from the
courtroom in violation of his right to be present during the punishment phase.








One of the most basic rights
guaranteed by the Confrontation Clause is the defendant=s right
to be present in the courtroom at every stage of his trial.  Illinois v. Allen, 397 U.S. 337, 338,
90 S. Ct. 1057, 1058, 25 L. Ed.2d 353 (1970). 
A criminal defendant may lose his constitutional right to be present at
trial if, Aafter he has been warned by the
judge that he will be removed if he continues his disruptive behavior, he
nevertheless insists on conducting himself in a manner so disorderly,
disruptive, and disrespectful of the court that his trial cannot be carried on
with him in the courtroom.@  Id., 397 U.S. at 343, 90 S. Ct. at
1060B61.  Trial courts confronted with Adisruptive,
contumacious, stubbornly defiant defendants must be given sufficient discretion
to meet the circumstances of each case.@  Id., 397 U.S. at 343, 90 S. Ct. at
1061.  When a defendant=s
behavior is of Aan
extreme and aggravated nature,@ that
discretion encompasses expulsion from the courtroom.  Id., 397 U.S. at 346, 90 S. Ct. at
1062; see also Ramirez v. State, 76 S.W.3d 121, 129 (Tex. App.CHouston
[14 Dist.] 2002, pet. ref=d).  

Examples of conduct found to be
of an Aextreme
and aggravated nature@ include:
(1) repeatedly arguing with the trial court in an abusive manner and
threatening to kill the trial judge, Allen, 397 U. S. at 339B40, 90 S.
Ct. at 1059; (2) making repeated, nonresponsive, profane, vulgar, and
disruptive statements and exhibiting disruptive behavior, Burks v. State,
792 S.W.2d 835, 836B37 (Tex. App.CHouston [1st Dist.] 1990
pet. ref=d); (3)
ignoring the trial court=s
warnings not to disrupt the proceedings and engaging in a violent scuffle with
the bailiff, Dotson v. State, 785 S.W.2d 848, 853B54 (Tex. App.CHouston [14th Dist.] 1990,
pet. ref=d); and
(4) disrupting the trial by interjecting alleged facts that were not in
evidence in front of the jury, and after being warned that continued disruptive
behavior  would result in removal from
the courtroom, insisting to the trial court that his behavior was not
disruptive in a manner the appellate court presumed was highly disruptive, Ramirez,
76 S.W.3d 129B30. 








Appellant=s
behavior, as reflected in the record before us, was not of an Aextreme
and aggravated nature@ and did
not warrant his expulsion from the courtroom. 
Nothing in the record approaches the level of disruptive, contumacious,
defiant conduct necessary to justify the extraordinary action of removing a
defendant from the courtroom during trial. 
Rather than engage in Anoisy,
disorderly, and disruptive@ speech
and conduct, appellant made no sound whatsoever.  See Allen, 397 U. S. at 338, 90 S. Ct. at
1058.  Appellant simply sat, Aslumped
over in his chair,@ silent
and Anonresponsive.@

The trial court stated that,
sometime earlier, appellant had removed his classification badge.  The trial court also stated that appellant=s
behavior was consistent with his behavior when he was arrested, apparently
referring to appellant=s flight
from police officers before he was apprehended and his escape from a police car
after he was handcuffed.  Though this
court does not condone appellant=s alleged
removal of his classification badge while in custody, his flight from police
officers, or his apparent escape from a police car, none of these acts took
place inside the courtroom, and none of them provides a sufficient basis to
remove appellant from the courtroom during the punishment phase of his
trial.  Furthermore, appellant could have
engaged in all of these prior behaviors and still have been physically
incapacitated the morning that the punishment phase of his trial was to begin.








The trial court stated that it
had no doubt that appellant was pretending to be physically incapacitated, but
there are other indications in the record that appellant might have been
experiencing genuine health problems. 
Lieutenant Holden stated that appellant was late in receiving certain
medication and that Aan effect
[had taken] place on [appellant=s] body.@  Appellant had to be transported from the jail
to the courtroom in a wheelchair. Though Lieutenant Holden indicated that
appellant had followed instructions that morning to dress himself and to get in
and out of the wheelchair, conduct of this nature is not necessarily
inconsistent with appellant having experienced problems with his health or
medication.  Furthermore, Lieutenant Holden
also stated that appellant leaned at times when he was dressing himself and
that he was placed in the wheelchair because he was experiencing tremors.  There is no evidence that Lieutenant Holden
is qualified to give medical opinions, and he did not offer an opinion as to
whether he believed appellant was pretending to be incapacitated.  Nonetheless, Lieutenant Holden=s
statements did not provide a sound basis for the trial court to conclude
appellant was pretending to suffer physical incapacity rather than actually
experiencing health problems.  








While the jury was deliberating
and after it was too late to try to remedy any harm to appellant from the trial
court=s order
removing him from the courtroom, the trial court heard testimony from a jail
physician, Dr. Frank, who had evaluated appellant that morning.  Dr. Frank=s
testimony further confirmed that appellant might have been experiencing actual
physical symptoms either from a recent seizure or from taking his medication
that morning.[3]  Though we do not consider this medical testimony in
determining whether the trial court abused its discretion, we note
that it would have been prudent for the trial court to have heard this
testimony before ordering appellant removed from the courtroom and taken back
to the jail.  See Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App.
2003) (noting general rule that appellate court reviews propriety of trial
court=s ruling based on evidence before the
trial court at the time of the ruling). 
After carefully reviewing the record, we find no evidence of any Aextreme
and aggravated@ conduct by appellant that was Aso
disorderly, disruptive, and disrespectful of the court@ that his
trial could not have been Acarried
on with him in the courtroom.@  Allen, 397 U.S. at 343, 346, 90 S. Ct. at
1060B61,
1062.  Furthermore, even presuming that
appellant was only pretending to have suffered a seizure, as the trial court
believed, the trial court did not warn appellant that it would order appellant
removed from the courtroom if he continued the allegedly disruptive
behavior.  See Allen, 397 U.S. at
343, 90 S. Ct. at 1060B61; Ramirez,
76 S.W.3d at 129B30
(stating that defendant must be warned before being removed from courtroom and
finding that trial court did warn defendant before ordering his removal).  Inexplicably, when asked by the bailiff
whether appellant should be removed to the holdover area near the courtroom or
whether appellant should be taken back to the jail, the trial court ordered
appellant returned to the jail, precluding any possibility that appellant at
least could have listened to the proceedings during the punishment phase.  See Allen, 397 U. S. at 351, 90
S. Ct. at 1064 (Brennan, J., concurring) (stating that Awhen a
defendant is excluded from his trial, the court should make reasonable efforts
to enable him to communicate with his attorney and, if possible, to keep
apprised of the progress of his trial . . . 
it is not weakness to mitigate the disadvantages of his expulsion as far
as technologically possible in the circumstances@); Ramirez,
76 S.W.3d at 129B30
(affirming trial court=s order
removing defendant from courtroom when trial court allowed defendant to listen
to the proceedings in the holdover area near the courtroom).  








The State asserts the trial court
did not abuse its discretion in determining that appellant was intentionally
trying to disrupt the courtroom proceedings based in part on appellant=s filing
of several pretrial motions pro se, even though he was represented by
counsel.  Appellant filed all of these pro
se documents before trial.  None of
them indicate any attempt to disrupt, delay, or sabotage the trial.  In fact, the trial court ruled on two of
appellant=s pro se motions, granting
one of them.  The State also asserts
that, at one point during the guilt-innocence phase of the trial, appellant
addressed the court directly despite being represented by counsel.  On that occasion, appellant=s remarks
to the trial court were out of the hearing of the jury.  More importantly, appellant addressed the
court directly only after the trial judge directly asked him a question.  We find no merit in the State=s
arguments.

We conclude the trial court=s order
removing appellant from the courtroom for the entire punishment phase of his
trial was not Awithin the zone of reasonable
disagreement@ and constituted an abuse of
discretion.  Wheeler, 67 S.W.3d at
888; Shaw v. State, 846 S.W.2d 482, 486B87 (Tex.
App.CHouston
[14th Dist.] 1993, pet. ref=d)
(holding trial court erred in having defendant bound and gagged in presence of
the jury during punishment phase); Sanchez v. State, 702 S.W.2d 258, 259
(Tex. App.CDallas 1985, pet. ref=d)
(holding trial court erred in excluding defendant from courtroom during part of
his trial).  This error is of
constitutional magnitude.

Having found this constitutional
error, we must reverse the judgment as to punishment unless we determine beyond
a reasonable doubt that the error did not contribute to the jury=s
assessment of punishment at fifty-five years= confinement.  See Tex.
R. App. P. 44.2 (a); Garcia v. State, __ S.W.3d __, __, 2004 WL
574554, at *9 & n.43 (Tex. Crim. App. Mar. 24, 2003) (characterizing right
to translation of trial when defendant does not understand English as part of
defendant=s right to be present in the
courtroom during trial and holding that court of appeals should assess harm for
violation of this right under Tex. R.
App. P. 44.2 (a)); Ramirez, 76 S.W.3d at 130.  The punishment phase did not last long in
this case.  The State reoffered the same
evidence offered and admitted during the guilt-innocence phase as well as two
penitentiary packets that it asserted were from appellant=s two
prior burglary convictions.  The State
also offered expert testimony from Deputy R. Shield that the fingerprints of
the person convicted in the two penitentiary packets are the same and are
appellant=s fingerprints. Appellant=s counsel
did not cross-examine Deputy Shield and did not offer any evidence other than
re-offering the defense evidence admitted during the guilt-innocence
phase.  








In closing arguments, the State
argued that because this was appellant=s third
burglary conviction, the jury should assess punishment at life in prison so
that appellant could not continue committing burglaries.  Appellant=s counsel
focused on the fact that, even if the jury found this to be appellant=s third
burglary conviction, this burglary did not involve any physical injury and
involved only minimal property damage. 
Appellant=s counsel
sought to evoke sympathy for appellant and asked the jury to assess punishment
at the minimum of twenty-five years=
confinement, if the jury found the enhancement paragraphs true.

The jury found the enhancement
paragraphs true and assessed punishment at fifty-five years=
confinement, which is in the middle of the punishment range for this
offense.  Although the trial court
instructed the jury not to consider why the trial court had ordered appellant
removed from the courtroom, the trial court did not instruct the jury to
disregard the fact C
regardless of the reasons therefor C that the
trial court had ordered appellant removed from the courtroom.  When a trial court takes the extreme measure
of ordering a defendant removed from the courtroom for the entire punishment
phase of his trial, the jury is likely to make a negative inference simply from
the fact that the trial court ordered him removed.  See Shaw, 846 S.W.2d at 486B87.  We cannot say with confidence that the trial
court=s error
did not affect the jury=s
assessment of punishment to appellant=s
detriment, especially in light of the State=s
argument based on recidivism and the continuing danger to the community the
State claimed appellant posed.  The jury
may have been more receptive to this argument and the need to protect the
community from appellant and his allegedly incorrigible conduct after having
just learned that the trial court had ordered appellant removed from the
courtroom for the rest of the trial.  We
cannot say beyond a reasonable doubt that the trial court=s error
did not contribute to the jury=s
assessment of punishment.  See Tex. R. App. P. 44.2(a); Shaw,
846 S.W.2d at 486B87; Sanchez,
702 S.W.2d at 259.  Accordingly, we
sustain appellant=s second
issue.[4]








Because appellant does not challenge his conviction on appeal, we
affirm the conviction, reverse the trial court=s
judgment as to punishment, and remand to the trial court for a new punishment
hearing consistent with this opinion.  

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Opinion filed July 27, 2004.

Panel consists of Chief Justice Hedges and Justices Frost and Guzman.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  The State asserts
that appellant=s right to be present in the courtroom during the
punishment phase is subject to procedural default under ordinary
preservation-of-error rules and that appellant failed to preserve error in the
trial court.  We disagree.  Appellant=s right
to be present in the courtroom must be implemented by the judicial system
unless expressly waived.  See Garcia
v. State, __ S.W.3d __, __, 2004 WL 574554, at  *7B9 (Tex.
Crim. App. Mar. 24, 2003) (characterizing right to translation of trial when
defendant does not understand English as part of defendant=s right to be present in the courtroom during trial
and holding that this right is not subject to ordinary preservation-of-error
rules but must be implemented unless it is expressly waived); see also Illinois
v. Allen, 397 U.S. 337, 342B43, 90 S. Ct. 1057, 1060, 25 L. Ed.2d 353 (1970)
(holding that defendant=s right to be present in courtroom during trial is not
absolute and may be waived by consent or by disorderly and disruptive
conduct).  Appellant did not expressly
waive his right to be present in the courtroom; rather, appellant=s counsel timely objected to the trial court=s order that appellant be removed from the courtroom,
and the trial court overruled this objection.   






[2]  Appellant does
not argue that the Texas Constitution or the Texas Code of Criminal
Procedure  offer different levels of
protection than the federal constitution; therefore, we consider only the
federal constitutional complaint.  See
Mitschke v. State, 129 S.W.3d 130, 132 (Tex. Crim. App. 2004).





[3]  Dr. Frank
testified as follows: 

 

(1) Three weeks earlier, appellant had reported a
seizure and had been prescribed a daily dose of Dilantin, an antiseizure
medication. 

(2) If appellant were to miss a day of this medication
he would be more at risk of a seizure. 

(3) Appellant was brought to Dr. Frank at 7:30 a.m. Alaying sleeping on [a] stretcher with vomit coming out
of his mouth.@ 

(4) Dr. Frank evaluated appellant for reported seizure
activity.  

(5) It is documented that appellant=s medical history includes a seizure disorder.  

(6) Though appellant obeyed specific instructions, he
appeared very drowsy and hardly opened his eyes the entire time.  This reaction is common for somebody who has
just had seizure activity.  

(7) Dr. Frank tested appellant=s blood for the level of Dilantin and found that it
was 9.1.  The therapeutic range for
Dilantin is between 10 and 20.  

(8) Some people have seizures even when the
antiseizure medication in their bloodstream is within therapeutic levels, so
the therapeutic levels are merely a guide. 


(9) Dilantin makes some people sleepy. Dr. Frank had
appellant take a dose of Dilantin that morning and told him to Asleep it off.@

(10) Dr. Frank stated appellant appeared oriented to
person, place, and time but that he did not test him for higher brain functions
and would not know whether he was impaired in any way.  

(11) The stress of being in trial, having been
convicted, and facing a sentence of twenty-five years to life in prison could
induce a person who has a seizure disorder to have a seizure.  

(12) A person
with a seizure disorder could intentionally not take their medication in an
attempt to induce seizures.  Likewise, a
person with a seizure disorder could try to fake symptoms of a seizure.  It is hard to determine if appellant was
faking his symptoms, but in Dr. Frank=s
opinion, appellant did have a seizure because he was so drowsy and that is
usually associated with having a seizure.





[4]  Appellant=s first issue, if sustained, would only provide him
with a new punishment hearing, so we need not address it.