**Affirmed and Memorandum Opinion filed November 17, 2011.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-00254-CR
_____

**CRAIG RONALD HARRISON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1132564**

## MEMORANDUM OPINION

Appellant, Craig Ronald Harrison, was convicted for the third degree felony offense of theft. Due to the stipulated enhancements, appellant was sentenced to a term of ninety-nine years' imprisonment. Appellant brings eight points of error on appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The Crime and Investigation

On August 15, 2007, a Sears store employee placed the keys to a locked jewelry cabinet in a drawer. She later could not find them. She notified management, which informed Loss Prevention Manager Steven Holtz the following morning. Holtz informed his staff that they should pay special attention to the jewelry department that day.

Audrey Cole, a loss prevention officer, testified she was monitoring the security cameras when she noticed a man carrying an apparently empty black bag through the store. He was accompanied by a second man. She explained she notified Holtz and they both watched on the video camera as the men approached the jewelry counter, opened the locked counter with what appeared to be a key, and put necklaces, chains and bracelets in the black bag. She later identified the man with the bag as appellant.

At some point during this encounter, Holtz testified he left the loss prevention office and pursued the man with the bag out of the store and into a field adjacent to the Sears store. Holtz testified that the man turned his head to yell, "Stop chasing me." Holtz identified appellant as the man who shouted at him.

Holtz testified that during the pursuit, the man began tossing the merchandise and eventually the bag onto the ground. Holtz decided to recover the merchandise rather than continuing to chase the suspect. Holtz testified that thirty-five necklaces, five chains, and three bracelets were recovered from the field. Holtz asserted the value of the recovered merchandise was $20,409.57, and the value of the unrecovered merchandise was $15,514.84.

Holtz testified Officer Nguyen of the Houston Police Department arrived approximately an hour and a half to two hours after the incident. Holtz further testified that once Officer Nguyen left he noticed a vehicle near the area where the jewelry was

thrown and recorded its license plate number. Holtz stated he called the police to report this license plate number.

Officer Nguyen testified he observed Holtz and Cole inventory the recovered merchandise, but only took Holtz's statement. Officer Nguyen acknowledged he did not request crime scene investigators to conduct fingerprint tests, cordon off the jewelry counter, photograph the recovered jewelry, take either the bag or jewelry into evidence, or search for the suspects. He stated he filed a report with the "main frame system" for later follow up by an investigator.

Sergeant Rogers McGrady of the Houston Police Department conducted the follow up investigation. He began working the case on August 24, 2007. Sergeant McGrady decided to follow-up on the license plate number that Holtz reported. From that plate number he identified appellant's wife as the owner of the vehicle. Sergeant McGrady testified appellant's wife agreed to meet with him outside her place of employment, but that her manner was defensive. Sergeant McGrady stated he provided the woman with two still photos taken from the Sears surveillance video, but she informed him that she could not identify anyone in either photo. Nonetheless, Sergeant McGrady explained that he later checked appellant's criminal history so that he could view a photo of him. Sergeant McGrady testified that when he compared appellant's driver's license photo and the images on the surveillance video, he determined the images were of the same person.

After that, Sergeant McGrady went to Republic Harley Davidson, where appellant had once worked. Melanie Simples, the receptionist at the business, testified Sergeant McGrady showed her two still photo screen shots from the Sears surveillance video and asked her if she recognized anyone in the photos. She stated that she recognized appellant from the photos. Elsa Zavala testified she also identified appellant in the photos. She acknowledged, however, Simples called her and said, "someone was there . . . to question me about Craig" before she saw the photos. Apparently, police concluded there was probable cause to arrest appellant based on the above identifications.

3

## II.     Voir Dire

During *voir dire*, the State used preemptory strikes to remove three of at least four African-American jurors.   In response, Appellant raised a *Batson* challenge to object to the striking of these jurors.[1]   The State proceeded to provide a race-neutral explanation for the strikes used.   The State claimed it struck Venireperson 13 because the juror was a minister, and because of his profession the State believed he would be more lenient to appellant.   The reasons given for striking Venireperson 25 were she had a conviction for theft by check in 2008; furthermore, the State contended she rolled her eyes during questions of punishment when the prosecutor was questioning the panel, but nodded her head and acted as though "she had a rapport" with defense counsel.   The State explained that Venireperson 28 was struck because she rolled her eyes when the prosecutor described the sentence range as twenty-five years to life in prison; the nonverbal communication led the State to believe she did not agree with the sentencing range.

After the State concluded its rationales for striking the venire members, the trial court found that the State had established race-neutral reasons for the strikes.   Appellant's counsel made no further challenges to the State's explanations and made no objection when the trial court dismissed the venirepersons.

## III.    The Trial

After the State rested, the defense made a motion for directed verdict based upon two theories.   The first theory alleged that the State failed to meet its burden to prove the items were stolen in the offense alleged against appellant.   The defense argued that the actual jewelry was not in evidence, nor were photos of the jewelry.   The defense contended the sole evidence that the specific pieces of jewelry were stolen during the incident was the testimony of Holtz, who received information from a third party about the value of the jewelry. The second theory alleged that all identifications of appellant were

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (prohibiting racial discrimination when seating a jury).

4

tainted because "[t]hey were against the policies and procedures of the Houston Police Department." The motion for directed verdict was denied.

The jury convicted appellant of theft of property of the value of over $20,000 and under $100,000.

## IV. Punishment Phase

During the punishment phase of the trial, the prosecutors introduced evidence of an alleged theft that occurred at Republic Harley Davidson. Edgar Walker, an employee of Republic Harley Davidson, testified that there was video evidence that appellant stole a ring and a bracelet worth between two thousand and four thousand dollars. Appellant had a criminal case pending on that matter at the time of this trial.

Mary Soheili, a worker's compensation adjuster for Zurich Insurance, testified that appellant had been receiving payments from worker's compensation prior to his arrest. The terms of the insurance policy express that a person should not be entitled to collect payments while incarcerated. She explained that appellant and his wife had called several times to her offices to explain that he was in California caring for a sick brother when he was actually in jail pending the outcome of his trial. Consequently, Zurich Insurance paid appellant $3,986.02 in benefits he was not entitled to receive.

Appellant also stipulated to the following convictions: two counts of aggravated robbery, five counts of second degree burglary, one count of grand theft, two counts of second degree robbery, one count of possession of stolen credit cards, one count of theft, and two counts of "drive or take vehicle."

The jury sentenced appellant to ninety-nine years' imprisonment.

## I. Did the Trial Court Commit Error by Denying Appellant's *Batson* Challenge?

Appellant contends his rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas Code of Criminal Procedure were

violated when the trial court denied his *Batson* challenge.   U.S. CONST. amend. XIV, § 1; Tex. Code Crim. Proc. Ann. § 35.261 (West 2010).

## A.   Standard of Review

In a *Batson* challenge, the moving party must first make a prima facie case showing the striking party exercised its peremptory challenge on the basis of race. *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866 (1991); *Contreras v. State*, 56 S.W.3d 274, 278 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also* Tex. Crim. Proc. Code Ann. § 35.261.   The burden then shifts to the striking party to provide a race-neutral explanation for the strike.   *Hernandez*, 500 U.S. at 358–59, 111 S.Ct. at 1866. If the striking party articulates a race-neutral explanation, the objecting party must prove purposeful discrimination, since that party has the ultimate burden of proving purposeful discrimination. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002)*; Wamget v. State*, 67 S.W.3d 851, 866–67 (Tex. Crim. App. 2001).

## B. Analysis

Appellant contends the race-neutral explanations offered for the strikes on Venirepersons 13, 25, and 28 were pretextual.   Appellant notes there is no evidence in the record that Venireperson 13 was a minister and that Venirepersons 25 and 28 exhibited any of the body language the State contended they showed.[2]   Nonetheless, the issue is waived on appeal because appellant did not challenge the State's race-neutral reasons in the trial court.   *See* Tex. R. App. P. 33.1; *Johnson*, 68 S.W.3d at 649.   The trial court found the State had made a race-neutral showing to which appellant responded, "Thank you."   As a

---

[2] We note that the record does reflect that "Reverand Richnow," the juror questioned after Juror No. 12, indicated that someone broke into "our church" and that he was not sure he could be fair in the case. Moreover, appellant does not cite, and we have not found, any authority for the proposition that the written record must document nonverbal indications of bias in order for a party to rely upon them as a basis for race neutral explanation.   *But see Tennard v. State*, 802 S.W.2d 678, 682 (Tex. Crim. App. 1990) ("[W]e must rely on the trial court's observations of the venireman's answers and demeanor ….").

6

result, appellant failed to carry his burden of showing the race-neutral explanations were not valid. *See Johnson*, 68 S.W.3d at 649.

We overrule appellant's first point of error.

## II.    Did the Trial Court Abuse its Discretion by Admitting the Video Recording of the Theft?

Appellant contends the trial court abused its discretion when it admitted the Sears security videos of the thefts into evidence. Appellant argues it should not have been admitted because: (1) Holtz, who testified about the video, was not certified to convert or download the video recordings to CD; (2) Holtz was not present at the store on August 15, 2007, so he lacked personal knowledge when he testified that the recording was a fair and accurate depiction of the events; (3) Holtz was not viewing the monitors during the theft on August 16, 2007; (4) Holtz is not an expert in the video recording system, known as Intellex, so he could not be an expert witness; and (5) the recordings were not presented to law enforcement until August 28, 2007.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will reverse a trial court's decision to admit or exclude evidence only when the decision falls outside the zone of reasonable disagreement. *Id.*

### B. Analysis

Under the Texas Rules of Evidence, a video recording is considered a photograph, and its admission is governed by Rule 901. Tex. R. Evid. 1001(2). Prior to admission into evidence, a video recording must be authenticated or identified to establish it is what it is claimed to be. Tex. R. Evid. 901. Proffered evidence may be authenticated by the testimony of a knowledgeable witness that an item is what it is purported to be. Tex. R. Evid. 901.

Appellant first argues Holtz was not certified to convert or download the recordings to CD, which we presume was the format of the recording when it was admitted into evidence. We must also presume Appellant's argument attacks the authentication of the video recording because we can find no separate requirement in law, and appellant cites none, that states one must have a certification to copy a video recording from one format to another. The only requirement under the Texas Rules of Evidence is that the video recording be authenticated or identified prior to its admission into evidence. Tex. R. Evid. 901.

During trial, appellant challenged Holtz's credentials and took Holtz on voir dire. Appellant asked if Holtz had "any experience of transferring these particular images onto a videotape?" When Holtz was asked if he was certified to transfer the recording, he responded that he was not certified. Holtz stated he had "three and a half years of experience plus about another year and a half at [another store] doing the exact same thing." Appellant objected to the admission of the recording into evidence based on Holtz's lack of certification. This was the only objection appellant made at trial regarding the admissibility of the recording. The trial court overruled appellant's objection.

Holtz testified to the following facts regarding the video recording and the security camera system. The surveillance camera system in place at Sears recorded every day, and saved those recordings "usually a month and a half." The monitors in the security room displayed a high quality picture, but that the image is degraded upon storage because the file size for storing a higher quality picture is too high. That after the theft, Holtz went through the saved recordings from each camera to see every recorded angle of the event. Holtz then saved all of the recordings from those camera angles that captured the incident. He further testified that the video he saved was a fair and accurate representation of what happened on August 15 and 16, 2007. Holtz also viewed the video prior to his testimony that day and stated it was the same video that he had saved.

8

From Holtz's testimony there was sufficient evidence from which the trial court could find that the video had been authenticated in accordance with Rule 901. *See* Tex. R. Evid. 901; *see also Thierry v. State*, 288 S.W.3d 80, 89 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding videotape of surveillance footage authenticated through loss prevention officer not present at the time of the incident when loss prevention officer described the surveillance system and how it worked, testified he had personally copied the surveillance onto videotape, viewed the tape prior to his testimony and testified it fairly and accurately represented what it purported to show). We conclude the trial court did not abuse its discretion by admitting the video recording.

Appellant made further objections to the admission of the video tape in his points of error (2) – (5), above. None of these points were ever made to the trial court. A party must make all objections to the trial court before an appellate court may review the complaint. *See* Tex. R. App. P. 33.1. As a result, appellant failed to properly preserve argument on his remaining challenges to the admissibility of the video recording. *See id.*

We overrule appellant's second point of error.

## III.  Was the Evidence regarding the Value of the Jewelry Insufficient?

In point of error three, appellant contends the State's evidence proving the value of the jewelry stolen during the theft was more than $20,000 but less than $100,000 was factually insufficient. Appellant was charged with felony theft in the third degree, which requires the State to prove appellant stole property valued between $20,000 and $100,000. *See* Tex. Penal Code § 31.03 (a), (e)(5) (West 2011). Appellant asserts the valuation evidence was insufficient because: (1) the fair market value of the jewelry was not established because no witness testified about whether any jewelry had been put on sale or reduced in price; (2) all jewelry listed on the inventory "has a dollar value ending with '99 cents,'" which appellant asserts is not an indicator of true or fair market value, but is a marketing gimmick to make the customer believe the sale price is lower"; (3) it is "common knowledge" that jewelry is sold at a 300 percent markup in retail stores; (4)

Officer Nguyen did not take the recovered jewelry into evidence; (5) Officer Nguyen did not take photographs of the recovered jewelry, but instead relied on Holtz's representations about the value of the jewelry; (6) the jewelry listed in the inventory admitted into evidence might have been "taken by other shoplifters or employees or otherwise not properly accounted for during any preceding inventory"; and (7) no person with personal knowledge of the value of the jewelry testified.

In point of error seven, appellant asserts the trial court abused its discretion by denying appellant's motion for directed verdict. One of appellant's grounds for a directed verdict was that the State failed to prove the value of the recovered jewelry was at least $20,000. Because these two points of error require the same legal analysis as explained below, we will review these issues together.

## A. Standard of Review

Five judges on the Texas Court of Criminal Appeals have determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality opinion) (overruling the previous distinction between legal and factual sufficiency challenges).[3] As a result, we construe appellant's factual sufficiency challenge as a legal sufficiency challenge. Additionally, we review a denial of a motion for a directed verdict as a challenge to the legal sufficiency of the evidence. *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In a sufficiency review, we review all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential

---

[3] Nonetheless, this does not alter the constitutional authority of the intermediate courts of appeals to evaluate and rule on questions of fact. *See* TEX. CONST. art. V, § 6(a) ("[T]he decision of [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error").

elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). The trier of fact, as the sole judge of the credibility of witnesses, is free to believe or disbelieve all or any part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd.).

## B. Analysis

In a theft crime, one determination of the value of the property taken is the fair market value of that property at the time and place of the offense. Tex. Penal Code § 31.08(a) (West 2011). "Fair market value is . . . the amount the property would sell for in cash, giving a reasonable time for selling it." *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991). No single method of proving fair market value is exclusive under the statute. *Id.* One method of proving fair market value is by presenting evidence of the retail or sale price of the items taken. *Id.* (citing *Speights v. State*, 499 S.W.2d 119 (Tex. Crim. App. 1973)).

The State presented evidence regarding the retail price as the fair market value of the items taken at the time and place of the offense through the testimony of Holtz, the Loss Prevention Manager. Holtz testified that he and his staff personally recovered some of the merchandise taken in the theft from the field adjacent to Sears. Holtz explained that he took the recovered merchandise and made a list accounting for each item immediately after the incident occurred. Holtz testified that the price tags remained on "pretty much all" of the merchandise recovered and he determined the value of each recovered item of merchandise by its price tag. The total retail price of all recovered merchandise included in the list was $20,409.57. Officer Nguyen, who was present when Holtz was itemizing

11

and valuing the recovered merchandise, corroborated this amount in his testimony.[4]   The itemized list also included a section itemizing and totaling all of the unrecovered merchandise taken in the theft.   This section of the list was created by an unidentified "inventory specialist," valuing the unrecovered merchandise at $15,514.84.   The total retail price of all merchandise on the list was $35,924.41.   The list detailing and valuing both the recovered and unrecovered merchandise was admitted into evidence without objection.[5]   Additionally, Holtz testified regarding the value of all of the merchandise on the list without objection.

Appellant's argument that a person with personal knowledge did not testify as to the value of the merchandise was not properly preserved.   *See* Tex. R. App. P. 33.1.   Appellant did not object to Holtz's testimony regarding the value of the unrecovered merchandise, nor did he object to the admission of the list detailing such values at the time it was admitted into evidence.   As a result, this argument was not properly preserved for appellate review.   *See id.* (requiring a complaint to be made to the trial court by timely request, objection or motion as a prerequisite to presenting a complaint for appellate review).   Further, this argument is completely without merit as applied to Holtz because it is clear from the record Holtz established his personal knowledge of the value of the recovered merchandise by his testimony, as outlined above.[6]   Even if appellant's argument was properly preserved, Holtz's testimony regarding the value of the recovered merchandise was sufficient to establish a fair market value above the minimum of $20,000 required for the charge of third degree felony theft.   *See* Tex. Penal Code § 31.08(a).

---

[4] Officer Nguyen testified he viewed the price tags on the merchandise and that the value of the recovered merchandise was $20,400.

[5] Appellant moved to have the unrecovered items portion of the list redacted after the State rested. Appellant's motion was denied.

[6] The fact that no one with personal knowledge as to the unrecovered portion of the list testified would not change the result here for two reasons: (1) as stated above, the argument was not properly preserved; and (2) despite any possible objection to the unrecovered portion, the recovered portion is properly admissible and establishes the amount necessary to support the conviction of third degree felony theft.   *See* Tex. Penal Code § 31.03 (a), (e)(5).

All of appellant's arguments as to the sufficiency of the evidence establishing the value of the items taken merely raise fact issues to be decided by the jury. *See Keeton*, 803 S.W.2d at 306 ("A defendant is free to rebut a store price as representative of fair market value by showing that such retail or sale price was inflated by that store as evidenced by the price of the item at the same kind of stores in the general locale …. The trier of fact … must decide which value represents the fair market value of the item."). The State presented evidence of the fair market value of the items taken through Holtz's testimony and the list admitted into evidence. Appellant offered no witnesses or further evidence to rebut the State's evidence of fair market value. Instead, appellant relied on cross examination to raise issues as to the credibility and reliability of Holtz's testimony.

Viewing the evidence in the light most favorable to the verdict, we conclude a reasonable jury could find the fair market value of the recovered merchandise was the retail price of $20,409.57, as established by the State. *See Salinas*, 163 S.W.3d at 737; *Jones*, 984 S.W.2d at 257. This amount is within the range of $20,000 to $100,000 as required for a conviction of third degree felony theft. *See* Tex. Penal Code § 31.03(a), (e)(5).

We overrule appellant's third point of error, and part of appellant's seventh point of error.[7]

## IV. Did the Trial Court Err By Allowing Witnesses to Identify Appellant as the Person in the Video?

Appellant contends the trial court abused its discretion by permitting Holtz and Cole to make an in-court identification of appellant over his objection. At trial, appellant moved to suppress the in-court identification by both Holtz and Cole. Appellant argued that because the police failed to conduct a lineup or show a photo array, that any in-court identification would be based solely on the fact that appellant was the one in the defendant's chair. The trial court overruled appellant's motion. In his brief appellant

---

[7] The motion for directed verdict, and appellant's seventh point of error, also alleges the identification evidence is legally insufficient. We address that point in Part V.

argues that the identification procedure is "inherently unreliable" and cites to the factors listed in *Barley v. State* as support for his argument. *See Barley v. State*, 906 S.W.2d 27, 34–35 (Tex. Crim. App. 1995).

## A.  Standard of Review

The standard of review for a ruling on a motion to suppress an in-court identification procedure is to afford almost total deference to a trial court's determination of the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The same deference is given to the trial court's determination if the question presented is a mix of law and fact that turns on an examination of credibility and demeanor. *Id.*  Whether the witnesses' testimony was reliable or not turns entirely upon examination of the witnesses' credibility and demeanor.  This Court will give "almost total deference" to the trial court's determinations. *See id.*

## B.  Analysis

While there is no indication of any suggestive pre-trial identification, "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971 (1968)).  Appellant argues that his presence at defense counsel's table was such an impermissibly suggestive identification procedure that it led to his misidentification.  Appellant asserted at trial that he was the only African-American in the courtroom when Cole identified him.[8]  Additionally, when the in-court identifications were made, it had been two and a half years since the incident had occurred.

We note that appellant has failed to cite to Texas precedent, and we have found none, holding that the presence of the defendant at defense counsel's table when a witness

---

[8] It is unknown whether appellant was the only African-American in the courtroom when Holtz identified him.

is making an in-court identification is an impermissibly suggestive procedure which may lead to a very substantial likelihood of irreparable misidentification. *See Maxwell v. State*, 10 S.W.3d 785, 787–88 (Tex. App.—Austin 2000, no pet.) (rejecting argument that without benefit of a previous line-up an in-court identification of defendant who is sitting at counsel table violates due process); *Guerrero v. State*, 838 S.W.2d 929, 931–32 (Tex. App.—El Paso 1992, no pet.) (refusing to turn justice system into a game of "Where's Waldo?" by allowing defendant to sit in the audience while witness makes identification); *see also Bolton v. State*, 2008 WL 4958453, at *3 (Tex. App.—San Antonio 2008, no pet.) (not designated for publication); *Carrasquillo v. State*, 2003 WL 1848755, at *4 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (not designated for publication); *but see U.S. v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997) ("[I]t is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant." (citing *U.S. v. Archibald*, 734 F.2d 8938, 941, 943 (2d Cir. 1984)). In fact, Texas courts have held the opposite—that the defendant's presence at defense counsel's table works to enable a defendant to obtain due process of law. *Jordan v. State*, 500 S.W.2d 638, 641 (Tex. Crim. App. 1973) (stating the reason to sit with defense counsel is to enable defendant to consult with and assist his attorney in the conduct of his defense). Further, Texas cases have recognized that a defendant does not have the right to a pre-trial lineup or photo array. *See Sapp v. State*, 476 S.W.2d 321, 323 (Tex. Crim. App. 1972).

Even if we were to assume, without deciding, the identification was impermissibly suggestive, the in-court testimony is still admissible "as long as the record clearly reveals that the witness's prior observation of the accused was sufficient to serve as an independent origin for the in-court identification." *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983); *see also Shaw v. State*, 846 S.W.2d 482, 485 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (finding that a witness's in-court identification is not necessarily rendered unreliable by the fact that the witness viewed the defendant at defense counsel's table prior to making an identification at trial). Where it is established that the witness had an independent basis for identification, the in-court identification will not be reversible

error without substantial evidence that the identification was influenced by seeing the defendant at defense counsel's table. *See Shaw*, 846 S.W.2d at 485.

Holtz testified that on the day of the incident, he was in the security office at his desk. He stated that his desk was in the same room as the screens with the display of what was occurring in the store. Holtz testified he could view the screens from his desk. He stated that on the day of the incident, Cole called his attention to suspicious activity in the jewelry department. Holtz said he then went to where Cole was viewing the monitors and leaned over her shoulder to get a closer view of the suspicious activity. Once the perpetrators reached over the jewelry counter to unlock the case, Holtz testified he ran down to the floor to stop them. He further testified he had seen appellant's face in profile when appellant turned his head to yell at Holtz to stop chasing him. Holtz also stated that he recognized appellant from the video recording of the incident. Holtz made a positive in-court identification.

Cole testified as to the clarity of the monitor in which she viewed the crime as it occurred, and that she was able to zoom-in on the faces of the perpetrators. Cole testified that she could clearly see the perpetrator in the monitor she was viewing while the incident was occurring. Cole said she was able to remember what the perpetrator looked like, based on what she saw the day of the incident. Cole further corroborated Holtz's testimony that he viewed appellant in the monitor prior to going down to the floor to chase him. Cole testified she had not participated in a pre-trial identification procedure in connection with this case.[9] Cole also made a positive in-court identification.

Based on the above testimony of the witnesses, this Court finds that the witnesses had their own unique visual perception from which to make an in-court identification. Both witnesses had ample time and opportunity to view appellant during the commission of the offense. Both witnesses were attentive during the commission of the

---

[9] Cole did testify that she had viewed a photospread in connection with another suspect in the jewelry incident and that she identified the other perpetrator from that photospread.

16

crime—watching appellant from the time they spotted them on camera with what appeared to be an empty bag. Both identified appellant without hesitation.

Because there is an independent basis from which to make the in-court identification, the appellant must present a substantial showing that the identification was influenced by seeing the defendant at defense counsel's table. *See id.* In support of his argument, appellant lists numerous facts indicating that the identification by both Holtz and Cole was unreliable.

Appellant asserts that Holtz should not have been permitted to identify appellant in court because Holtz: (1) was not present on the day the keys went missing; (2) was not viewing the monitors when the theft occurred; (3) gave a description to police that did not match appellant; (4) did not identify appellant prior to trial by means of a photo spread or lineup procedure; and (5) had last made an identification two and a half years prior. Appellant asserts Cole should not have been permitted to identify appellant in court because Cole: (1) failed to give a description to police after the incident; (2) did not state the length of time she observed the incident through the monitors; (3) did not identify appellant prior to trial by means of a photo spread or lineup procedure; (4) did not describe the appearance of the persons she observed on the day of the incident prior to making her identification in-court; and (5) had last made an identification two and a half years prior.

Relative to the above listed arguments, only two have threshold legal merit. The fact that neither Holtz nor Cole had seen or identified appellant for two and a half years supports appellant's argument. But this is merely one factor to take into consideration when determining reliability of the witnesses' identification. The fact that Holtz gave a description that may or may not have been inconsistent with appellant's physical features would also support appellant's argument. At trial, counsel persistently asked Holtz to confirm the fact that the person in the courtroom had a beard and glasses, unlike the perpetrator in the video. It is readily apparent to this Court, as it probably was to the jury, that facial hair and glasses are easily altered physical features. Further, Appellant does

17

not indicate in his brief, or through citations to the record, the inconsistencies between Holtz's description and appellant's appearance. Accordingly, on this record we cannot determine the degree of disparity in the descriptions.

Giving deference to the trial court, we cannot say these facts support a substantial showing that the witnesses based their in-court identification on the mere fact that appellant was sitting at defense counsel's table. Further, because we find that the basis of the in-court identification by both Holtz and Cole was independent from viewing appellant in court appellant's fourth point of error is overruled.

## V. Did the Trial Court Abuse its Discretion by Denying Appellant's Motion for a Directed Verdict?

Appellant argues the trial court erred by not granting appellant's motion for a directed verdict. Appellant's second ground for a directed verdict was that the State failed to meet its burden to prove the identification of appellant as one of the thieves beyond a reasonable doubt.

### A. Standard of Review

We review a denial of a motion for a directed verdict as a challenge to the legal sufficiency of the evidence. *Gabriel*, 290 S.W.3d at 435. In a sufficiency review, we review all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Salinas*, 163 S.W.3d at 737. The trier of fact, as the sole judge of the credibility of witnesses, is free to believe or disbelieve all or any part of a witness's testimony. *Jones*, 984 S.W.2d at 257. We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz*, 851 S.W.2d at 246; *Harris*, 164 S.W.3d at 784.

The jury may infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it

sees fit. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the jury's discretion and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

### B. Analysis

Appellant claims the State failed to prove appellant was properly identified as one of the suspects because: (1) Holtz "did not identify [appellant] from his initial perception of the theft as it occurred because he did not see it occur;" (2) Holtz did not give "an accurate description of the suspects which was consistent with [appellant's] appearance on the day of trial;" (3) Holtz acknowledged he identified appellant from the recordings; (4) Cole's testimony is inherently unreliable.

Appellant's first complaint is without merit. Holtz testified he saw appellant when appellant approached the jewelry case and proceeded to reach over the case and unlock it. It was then that Holtz began his pursuit of appellant. Thus there is testimony to support the fact that Holtz did see the theft occur. Further, Holtz went on to testify that the man he saw reach over the case was the same man he chased from the store.

Appellant's second complaint fails to discuss how this renders the remaining identification evidence irrelevant. Even if Holtz's description of appellant from the day of the incident was inaccurate, there was other evidence present to support a reliable identification. That evidence was detailed in Part IV.

The testimony cited in support of appellant's third complaint is as follows:

[Defense counsel]: How do you know it is this individual, Mr. Harrison, is the one that is in the video?

[Holtz]: Because I was there.

[Defense counsel]: Well, you were there, sir; but you never saw his face. You are going by what is on the video, right?

19

[Holtz]: Like I said, I said that he looks older; but he still looks like the same man. He doesn't look like a different person if that is what you are asking.

[Defense counsel]: Well, you will agree with me that the person in that video doesn't have a beard, correct?

[Holtz]: Correct.

[Defense counsel]: You will agree with me that the person that is on that video does not have any glasses on, correct?

[Holtz]: Yes, sir.

[Defense counsel]: And the fact of the matter is is [sic] that until you got the subpoena to sit here and look at the person who is accused of this crime, you have not been able to compare him or anybody else with the person in that video, correct?

[Holtz]: No, sir.

[Defense counsel]: I will pass the witness, judge.

Appellant does not state how or why this testimony is important to disposition of this case. Further, it does not support the argument he makes, that Holtz acknowledged he identified appellant from the recordings. In response to defense counsel's question of whether he was identifying appellant by what was on the recordings, Holtz gave a non-responsive answer to which defense counsel did not object. Further, the question is ambiguous as to whether defense counsel meant the video recording he viewed earlier when it was played for the jury, or the monitors on the screens in the office on the day of the event. Finally, appellant's fourth and final argument was addressed in Part IV, and we will not repeat our discussion of the reliability of Cole's testimony.

The testimony of Holtz and Cole regarding their identification of appellant is set forth in detail in Part IV, and we will not repeat it here. In addition to the testimony of Holtz and Cole, the State presented other identification evidence. Appellant's former co-workers, Simples and Zavala, testified that Officer McGrady asked both of them individually to look at a still photo created from the video images of the crime. Both

20

identified appellant immediately from the photo. Furthermore, the jury viewed the video and the many still photos created from the video footage admitted into evidence. Consequently, the jury was capable of making an assessment of the quality of the images and comparing the images to appellant at trial.

We conclude that in a light most favorable to the verdict, a reasonable jury could identify appellant as the perpetrator of the crime. *See Salinas*, 163 S.W.3d at 737.

We overrule appellant's seventh point of error in its entirety.

## VI. Did the Trial Court Err by Failing to Include a Jury Instruction after Granting Appellant's Request to Include the Instruction?

Appellant contends the trial court erred by failing to give a jury instruction in response to his objection. Appellant contends the failure to give the jury instruction violated his due process rights and his right to due course of law. U.S. CONST. amend. XIV; TEX. CONST. art. I; § 19; Tex. Code Crim. Proc. Ann. art. 1.04 (West Supp. 2011).

### A. Standard of Review

In most cases, to preserve error for improper jury argument a contemporaneous objection must be made and the objecting party must receive a ruling from the court. Tex. R. App. P. 33.1(a); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), *cert. denied,* 509 U.S. 927 (1993). If the objection is sustained, the defendant must request an instruction to disregard the argument. *Cooks*, 844 S.W.2d at 727. If a defendant fails to object to a jury argument or fails to pursue an adverse ruling on his objection to the jury argument, he forfeits his right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cert denied,* 520 U.S. 1173 (1997).

There are two types of harm—constitutional and non-constitutional. *Id.* Constitutional error occurs if a provision of the U.S. or Texas Constitution requires a certain ruling. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Non-constitutional harm exists

21

when a court misapplies a statute or rule of evidence. Tex. R. App. P. 44.2; *Johnson*, 967 S.W.2d at 417. If we conclude there was error, we must then address if the error was harmful. Tex. R. App. P. 44.2(b). A non-constitutional error that does not affect substantial rights does not justify overturning the verdict. *Potier v. State*, 68 S.W.3d 657, 662–63 (Tex. Crim. App. 2002). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). If the error did not influence the jury or had only a slight effect, the error is harmless. *Johnson*, 967 S.W.2d at 417.

The appellate court should consider everything in the record to determine the likelihood the jury's decision was affected by the error. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). This includes such factors as evidence and testimony admitted to the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how the error may be considered in connection with other evidence in the case. *Id.* We may also consider jury instructions, both parties' theories of the case, closing arguments, and whether the State emphasized the error. *Id.*

### B. Analysis

The objection occurred during cross-examination of Holtz about the valuation of the unrecovered jewelry. Holtz stated that the valuation was performed by an "inventory specialist." The exchange was as follows:

> [Defense Counsel]: And as far as the unrecovered, the inventory specialist that did that that you relied on their work product to make your list, they are an important aspect in this case, aren't they?
>
> [Holtz]: Yes, sir.
>
> [Defense Counsel]: Are they here today?
>
> [Holtz]: No.
>
> [Defense Counsel]: Do you know who the inventory specialist is?

[Holtz]:   I would assume that probably Sears might, you know, that company may keep that information; but I don't know if it would even be available because they are a separate contractor.   They come in with a scanning machine and scan everything that is there; and, you know, it gets sent to the company; and the company uses our data base in order to determine the differences.

[Defense Counsel]:   I will object to the nonresponsive aspect of that, judge; and ask that the witness and the jury be instructed to completely ignore everything after no.

[The Court]:   The motion is granted.

[Defense Counsel]:   At some point after you collected this . . . jewelry, when was it — or how long was it between when you left to go back into the building and when this vehicle showed up?

The record shows appellant's counsel made a proper objection and requested a jury instruction to disregard the evidence.   The trial court sustained appellant's objection, but did not instruct the jury to disregard the evidence.   Appellant did not make any effort to remind the judge to formally instruct the jury.   However, we will assume without deciding that the trial court was in error for failing to instruct the jury to disregard the above testimony.

We next must determine whether the error was constitutional or non-constitutional. Appellant contends the failure to give a jury instruction was a violation of his due process and due course of law rights.   *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19; Tex. Code Crim. Proc. Ann. art. 1.04. Appellant has provided no legal authority showing that a failure to give a jury instruction is constitutional error.

Trial court error regarding the admission of evidence is generally non-constitutional error.   *See Solomon v. State*, 49 S.W.3d 356, 364–65 (Tex. Crim. App. 2001); *Stewart v. State*, 221 S.W.3d 306, 310 (Tex. App.—Fort Worth 2007, no pet.).   We determine that the request that the jury disregard the testimony should be evaluated as non-constitutional error because it is an evidentiary issue.   *See Morales*, 32 S.W.3d at 867.

23

We must now determine whether a substantial right of appellant was affected by the failure to instruct the jury. *See Potier*, 68 S.W.3d at 662–63. If the error did not influence the jury or had only a slight effect, the error is harmless. *Johnson*, 967 S.W.2d at 417.

Appellant alleges that absent an instruction to the jury to disregard the above testimony, the jury was free to believe that the amount given for the unrecovered items was the fair market value of that jewelry. However, the only testimony appellant sought to exclude was Holtz's speculation about who might have had further information about the identity of the inventory specialist. Additionally, prior to the above exchange, Holtz testified to the value of the unrecovered items without any objection from appellant. The State admitted into evidence the list showing the values of the recovered and unrecovered merchandise without any objection from appellant. To be found guilty of third degree felony theft, the jury must have found that appellant stole property valued between $20,000 and $100,000. *See* Tex. Penal Code § 31.03 (a), (e)(5). Holtz testified, without objection, that the value of the recovered merchandise was $20,409.57. We concluded in Part III that Holtz had sufficient personal knowledge to testify about the value of the recovered merchandise. Therefore, even if the jury disregarded all evidence of the unrecovered items, the value of the recovered items would still meet the minimum required to convict appellant for the charged offense. *See id*.

We conclude the error was harmless because the question asked about the *identity* of the inventory specialist and the nonresponsive answer given by Holtz would have had no or minimum influence on the jury's determination with regard to the value of the unrecovered jewelry. *See Johnson*, 967 S.W.2d at 417. As a result, no substantial right was implicated because the error did not have substantial and injurious effect on the verdict. *See Haley*, 173 S.W.3d at 518.

We overrule appellant's fifth point of error.

24

**VII.    Did the Trial Court Abuse its Discretion By Excluding Evidence That Charges Against a Codefendant for the Theft Had Been Dismissed?**

Appellant contends the trial court erred because it excluded evidence that the state had dismissed charges against his codefendant for the same theft offense.   On appeal, appellant asserts three arguments as to why the trial court was in error.   First, appellant contends that he was deprived of a meaningful opportunity to present a complete defense because he was not permitted to introduce evidence of the codefendant's indictment dismissal.   *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).   Second, appellant asserts that the evidence should not have been excluded because of the multiple references to "they" when witnesses were describing the incident.   Third, appellant contends that the evidence was relevant and thus should have been admitted.

At trial, appellant argued that the evidence should be allowed to be presented to the jury because the video was the "only way so far that any witness has been able to identify" appellant, that the codefendant was also shown in the video and that his case was dismissed because "[the State] didn't feel they had enough evidence to identify [the codefendant]." Further, defense counsel stated "I think that it is imperative that the jury be allowed to know that someone who has that exact amount of evidence against them, the state is not going forward on that case."   The State argued that presenting the evidence of the codefendant's dismissal would be irrelevant to appellant's case and that the evidence against codefendant was not exactly the same as that of appellant.   Defense counsel argued that even if the evidence was not exactly the same against codefendant, the fact that codefendant's case was dismissed by the State would still be relevant to show that the basis for identification of appellant was on "very, very shotty ground."   The trial court ultimately excluded the evidence.

On appeal, appellant contends the knowledge of the dismissal "would have given the jury a more complete picture as to the strength of the State's case and the identification of [appellant] as one of the perpetrators of the theft, especially in light of the initial suspect

description given to Officer Nguyen by [Holtz] immediately after the theft in 2007." Appellant provides no case law supporting this contention. Appellant further argues that the jury should have been informed of the dismissal of codefendant's charges because "substantially the same evidence" would have been introduced against the codefendant and "the State deemed that evidence insufficient to proceed against the codefendant …." Again, appellant cites no authority in support of this argument.

## A. Standard of Review

To preserve error, the complaining party must make a timely, specific objection and obtain a ruling on the objection. Tex. R. App. P. 33.1(a); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). Additionally, the error must correspond to the objection made at trial. *Broxton*, 909 S.W.2d at 918; *Turner*, 805 S.W.2d at 431. "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990), *cert. denied* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Even constitutional errors may be waived by failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *Gibson v. State*, 516 S.W.2d 406, 409 (Tex. Crim. App. 1974).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Weatherred*, 15 S.W.3d at 542. A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement or if it acts without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). If the ruling was correct under any theory of law applicable to the case, we must uphold the judgment. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). It is well established principle that disposition of the case against one codefendant ordinarily never becomes admissible in the trial of another codefendant. *Rodriquez v. State*, 552 S.W.2d 451, 456 (Tex. Crim. App. 1977).

## B. Analysis

Appellant's first argument, that he was deprived of a meaningful opportunity to present a complete defense, was not presented to the trial court. Appellant did not argue that he was being denied the right to present a defense or that he was being denied any fundamental constitutional right to the trial court for its determination. *See Broxton*, 909 S.W.2d at 918. Appellant's second argument, that the multiple references to "they" by the witnesses, was also not presented to the trial court. While appellant made a timely objection, the basis for that objection at trial is not the same as the first two arguments appellant presents on appeal. We will not consider these arguments for the first time on appeal. *See Johnson*, 803 S.W.2d at 292. Error, if any, has been waived. *See Broxton*, 909 S.W.2d at 918; *Briggs*, 789 S.W.2d at 924.

Appellant's third argument, that the evidence was relevant and therefore should have been admitted, was presented to the trial court and the trial court denied admission of the evidence. Thus, we will reach the merits of this argument. Appellant complains the trial court would not allow him to present evidence of the disposition of the charges against the codefendant before the jury even though the disposition was "relevant." The codefendant was not called as a witness by the State, and appellant stated he would not call the codefendant because the codefendant would refuse to testify by invoking his Fifth Amendment privilege. Thus, because the codefendant never testified, the disposition of the State against the codefendant never became admissible. *See Rodriquez*, 552 S.W.2d at 456 (holding that the disposition of the case against one codefendant ordinarily never becomes admissible in the trial of another codefendant). The trial court properly refused to let defense counsel introduce such evidence before the jury. *See id.*

We determine the trial court did not abuse its discretion by excluding evidence of the dismissal of the indictment against the codefendant. *See id.*; *Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987).

We overrule appellant's sixth point of error.

27

## VIII. Did the Trial Court Err By Failing to Give a Proper Jury Instruction on Extraneous Offenses?

Appellant contends the trial court erred because it did not provide a jury instruction on the extraneous offenses.

### A. Standard of Review

When reviewing claims of jury charge errors, we first determine whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If there was error and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean there is "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If the error was not objected to, the error requires reversal only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.* We determine whether egregious harm exists by considering "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

### B. Analysis

Appellant contends it was "improper" to bring evidence of the pending charges against him regarding the Republic Harley Davidson theft. Nonetheless, appellant "concedes such error would likely be determined to be harmless." Appellant then argues that the trial court erred by failing to give a jury charge instruction informing the jury that it must find the extraneous offenses true beyond a reasonable doubt before they can be considered in sentencing. Tex. Code Crim. Proc. Art. 37.07, § 3(a) (West Supp. 2011); *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996). The State concedes the trial court erred by failing to give this instruction. Appellant acknowledges that he did not

28

object to the jury charge at trial, but states that we should conclude the lack of jury charge on this point was egregious harm. Consequently, we will consider that issue.

During the punishment phase, the jury heard evidence that appellant stipulated he had been convicted of fourteen previous crimes, including armed robbery, second degree burglary, and theft. Mary Soheili testified that appellant had deceived her company into providing nearly $4,000 of worker's compensation benefits to him while he was incarcerated. Edgar Walker testified that there was an ongoing criminal case against appellant for the theft of jewelry from Republic Harley Davidson.

Appellant testified that he committed his crimes because he was addicted to drugs. Over his life time, he admitted, he had spent twenty years in prison and was on parole at the time of the Sears theft. Nonetheless, he told the jury he was a "born again Christian" and he was "trying to live [his] life right." He also informed the jury that he was alone because his wife was preparing to divorce him and his nephew and son did not come to his trial. Appellant also stated that he had "a liver problem" and a "prostate problem" that might be cancer. As a result, he was confined to a wheelchair and catheterized.

On cross examination, appellant contended he was no longer a thief, but had been in the past. The prosecutor asked if he was a thief, "When you stole from the Harley Davidson?" Appellant responded, "Yes." Later, appellant responded in the affirmative when asked, "[Y]ou did the one at the Harley Davidson, correct?"

During closing arguments, the prosecutor briefly mentioned the Republic Harley Davidson robbery, but spent the majority of his time speaking about the offenses appellant stipulated to having committed. In particular, the prosecutor discussed his previous sentences and time in prison, noting that appellant had not rehabilitated himself after his previous convictions.

Appellant chose to testify at the punishment hearing and had the opportunity to deny his involvement in the robbery. Instead, he admitted twice during cross examination that

29

he had committed the offense. Furthermore, although the prosecution mentioned the Republic Harley Davidson theft in closing remarks, the focus was on the offenses appellant stipulated he committed and appellant's failure to follow the law upon his release from prison. Considering the chronology of events during trial, and the appellate record as a whole, we conclude appellant has not shown that the jury charge error caused him egregious harm. *See Almanza*, 686 S.W.2d at 171.

We overrule appellant's eighth point of error.

## CONCLUSION

Having overruled each of appellant's points of error, we affirm the trial court's judgment.

/s/     John S. Anderson
        Justice

Panel consists of Justices Anderson, Seymore, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).