

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00584-CR

Ruben **REYNA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-6862
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  October 2, 2013

AFFIRMED

Ruben Reyna, Jr. was convicted of stalking his former girlfriend and was sentenced to ten years' imprisonment and a $5,000 fine. On appeal, he argues his conviction violated double jeopardy, his confrontation rights were violated when he was removed from the courtroom, and the court infringed on his presumption of innocence when he was handcuffed in the presence of the jury. We overrule his issues on appeal and affirm the trial court's judgment.

**ANALYSIS**

***Double Jeopardy***

In his first issue, Reyna asserts his double jeopardy right against multiple punishments for the same conduct was violated because his conviction for stalking was based on the same facts as his two prior convictions for criminal mischief.  *See* U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 14.  He concedes he did not make a double jeopardy objection in the trial court, but argues the multiple punishments violation is clearly apparent from the record in that, based on the evidence presented at trial, the criminal mischief offenses are lesser-included offenses of stalking. *See Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).  Therefore, Reyna contends his prosecution for stalking was barred because he has already been punished for the criminal mischief offenses.

We apply the *Blockburger* "same elements" test to determine whether an offense constitutes a lesser-included offense of the charged offense, and is thus considered the same offense for double jeopardy purposes.  *Denton*, 399 S.W.3d at 545 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *Langs*, 183 S.W.3d at 685.  *Blockburger* requires a comparison between the elements of the greater offense and the elements of the potential lesser-included offense to determine whether one offense requires proof of an element the other does not.  *Denton*, 399 S.W.3d at 545-46; *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008) (noting *Blockburger* test is the initial step in a multiple-punishments analysis).  While *Blockburger* was based solely on the statutory elements, under article 37.09 of the Texas Code of Criminal Procedure, we focus on the statutory elements as they are alleged in the charging instrument. *Bigon*, 252 S.W.3d at 370; TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006) (a lesser included offense is one that is established by "proof of the same or less than all the facts required to establish the commission of the offense charged").  Under the cognate-pleadings approach,

double-jeopardy challenges may be made even to offenses that have different elements under *Blockburger*, if the same "facts required" are alleged in the charging instrument. *Denton*, 399 S.W.3d at 546; *Bigon*, 252 S.W.3d at 370 (citing *Hall v. State*, 225 S.W.3d 524, 531 (Tex. Crim. App. 2007)).

The Penal Code defines the elements of stalking, in relevant part, as when a person (1) on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at another person, (2) knowingly, (3) engages in conduct that (a) he knows or reasonably believes the other person will regard as threatening, (b) caused the other person or a member of the person's family or household to fear bodily injury, death, or an offense against the person's property, and (c) would cause a reasonable person to fear bodily injury, death, or that an offense will be committed against the person's property. TEX. PENAL CODE ANN. § 42.072 (West Supp. 2012); *see Avilez v. State*, 333 S.W.3d 661, 670-71 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The indictment alleged that, beginning on or about August 12, 2007 and continuing through September 23, 2007, Reyna did, pursuant to the same scheme or course of conduct, knowingly engage in conduct directed toward the complainant, to-wit: making telephone calls that Reyna knew and reasonably believed his former girlfriend would regard as threatening that an offense would be committed against her property, and caused her to be placed in fear of bodily injury or death, or fear that an offense would be committed against her property, and [which] would cause a reasonable person to fear that an offense would be committed against her property.

A person commits the offense of criminal mischief when, (1) without the effective consent of the owner, (2) he intentionally or knowingly (3) damages or destroys the tangible property of the owner. TEX. PENAL CODE ANN. § 28.03 (West 2011). The informations in Reyna's two prior criminal mischief cases alleged that, without the effective consent of the owners, he intentionally and knowingly damaged and destroyed a motor vehicle, causing pecuniary loss between $500 and

$1,500, and intentionally and knowingly damaged and destroyed a front door, causing pecuniary loss between $50 and $500. *See Prejean v. State*, 704 S.W.2d 119, 123 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (amount of pecuniary loss, which determines the degree of offense and applicable penalty, is an essential element of criminal mischief).

Comparing the two offenses, it is apparent that each offense requires proof of an element the other does not, and therefore they do not constitute the same offense for double jeopardy purposes. *Denton*, 399 S.W.3d at 545-46; *Bigon*, 252 S.W.3d at 370. Stalking requires proof that the defendant engaged in certain threatening behaviors (including a threat to commit a property offense) directed at a particular person on more than one occasion, but does not require actual commission of the threatened offense. On the other hand, criminal mischief requires proof that, on a particular occasion, the defendant actually damaged or destroyed tangible property belonging to another person, causing a pecuniary loss. *See, e.g., Avilez*, 333 S.W.3d at 671 (concluding that stalking and violation of a protective order are not the same offenses for multiple punishment purposes because the former requires proof the defendant engaged in certain prohibited behaviors on more than one occasion, but the latter may be proven with only one instance of misbehavior); *see also Sanders v. State*, 664 S.W.2d 705, 709 (Tex. Crim. App. 1982) (rejecting claim that criminal mischief was a lesser-included offense of arson because amount of loss element of criminal mischief is not included within the proof necessary to establish arson); *De Vaughn v. State*, 239 S.W.3d 351, 356 (Tex. App.—San Antonio 2007, pet. ref'd) (holding criminal mischief was not a lesser-included offense of burglary).

Reyna concedes the elements of stalking and criminal mischief are not the same, but argues that our multiple punishments/lesser-included analysis must also consider the evidence presented at trial to prove stalking which he contends was based on the same facts used to prove criminal mischief. The Court of Criminal Appeals rejected a similar argument in *Ex parte Watson*, 306

S.W.3d 259 (Tex. Crim. App. 2009). There, the appellant supported his double jeopardy claim by arguing that the "acts upon which the failure to yield right of way offense [was] charged . . . were the same acts that gave rise to the intoxication assault offense . . . ." *Id.* at 62. The Court explained that under article 37.09, courts engage in a "*two*-step process of first looking at the charging instrument to discern the lesser-included offenses and next determining whether the evidence at trial supports giving one of [the] predetermined lesser-included offense instructions." *Id.* at 262-63 (quoting *Hall*, 225 S.W.3d at 531). The first step of the lesser-included analysis is determining whether an offense is indeed a lesser-included offense of the greater offense by comparing the statutory elements of the offenses *as alleged* in the indictment or information. *Watson*, 306 S.W.3d at 263 (emphasis added). This part of the analysis is a question of law and does not depend on the evidence presented at trial. *Id.* (noting the first step must be capable of being performed before trial to provide the defendant with notice). The court considers the evidence presented at trial only if it reaches the second step of the lesser-included analysis when it determines whether there is evidence that supports giving a lesser-included instruction to the jury. *Id.*; *Hall*, 225 S.W.3d at 536. Reyna has confused the concepts of comparing the statutory elements as alleged in the indictment under the first step of the lesser-included analysis with reaching the second step in which the court considers the evidence presented at trial in determining whether a lesser-included instruction is appropriate. *See Watson*, 306 S.W.3d at 262-63; *Hall*, 225 S.W.3d at 535-36.

Because we conclude that criminal mischief fails to qualify as a lesser-included offense of stalking, we do not reach the second step of the article 37.09 analysis. *See Watson*, 306 S.W.3d at 265. Reyna's prosecution for stalking is not barred by his previous criminal mischief convictions.

### *Defendant's Removal from Trial*

In his second issue, Reyna asserts his Confrontation Clause rights were violated when the trial court removed him from the courtroom during his trial. U.S. CONST. amend. VI, XIV; TEX.

CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). The State argues Reyna failed to preserve this issue by failing to object to his removal. A defendant's right to be present during his trial is not subject to ordinary preservation of error rules—it is a basic right that must be implemented unless expressly waived by the defendant. *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Kessel v. State*, 161 S.W.3d 40, 44 n.1 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), *cert. denied*, 546 U.S. 963 (2005) (citing *Garcia v. State*, 149 S.W.3d 135, 142-45 (Tex. Crim. App. 2003)).

A criminal defendant may lose his constitutional right to be present during trial if, after being warned by the trial judge that he will be removed if he continues his disruptive behavior, he continues to conduct himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Kessel*, 161 S.W.3d at 45 (quoting *Allen*, 397 U.S. at 343). Trial judges have discretion to address a "disruptive, contumacious, stubbornly defiant" defendant, and that discretion includes expulsion from the courtroom when the defendant's behavior is of "an extreme and aggravated nature." *Kessel*, 161 S.W.3d at 45 (quoting *Allen*, 397 U.S. at 343, 346). We review a trial court's decision to remove a defendant from the courtroom for an abuse of discretion. *Kessel*, 161 S.W.3d at 44, 47. Deprivation of the right to be present during trial is subject to harmless error analysis unless the deprivation, by its very nature, cannot be harmless. *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983); *Ramirez v. State*, 76 S.W.3d 121, 130 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Here, the record shows that Reyna was removed from the courtroom after making repeated verbal outbursts during trial, some in the jury's presence and some not, and after being warned by the court that any further outbursts would cause him to be removed. Reyna's first outburst occurred in the jury's presence when the investigating detective identified Reyna in court and Reyna stated, "Yeah, you are also lying about everything." Then, during a bench conference

outside the presence of the jury, Reyna interjected his own comments while the attorneys and judge were discussing legal matters. Before calling the jury back in, the trial judge warned Reyna that he would be removed from the courtroom if he continued his outbursts. The following exchange occurred:

> THE COURT: Mr. Reyna, I would like very much for you not to be handcuffed and for you not to be changed, – chained, rather, but let me tell you this, I cannot do that unless you tell me that you are not going to hurt anyone or yourself and that you are not going to have any outbursts in this trial.
>
> DEFENDANT: Well, I can't – I am not going to hurt no one. I promise you that. I don't know about outbursts.
>
> THE COURT: So the outbursts, you are going to continue?
>
> DEFENDANT: Yeah.
>
> THE COURT: Let me also warn you that if you continue with the outbursts, then I will remove you from the courtroom. We are not going to have that. That is not appropriate.
>
> ***
>
> DEFENDANT: I am not going to hurt no one.
>
> THE COURT: Are you going to make any more outbursts like you did earlier?
>
> DEFENDANT: Uh –
>
> THE COURT: You called someone a liar.
>
> DEFENDANT: Because they are lying.
>
> THE COURT: That is your opinion, but if you –
>
> DEFENDANT: No, it is not my opinion. That's the truth.
> THE COURT: It appears to me that you are not going to stop making those comments during the trial in front of this jury.
>
> DEFENDANT: I think I can stop. I think I'm done.
>
> THE COURT: The next time that I hear an outburst, then I'm going to remove you from the courtroom.

DEFENDANT:        All right.  Then you need to take off the chains so I can relax.

THE COURT:        Pardon?

DEFENDANT:        Then you can take off the chains because you said that.

THE COURT:        We can go ahead and take off the handcuffs.

DEFENDANT:        The handcuffs.

THE COURT:        We'll start with that and we'll see whether or not you behave.

DEFENDANT:        All right.

(Handcuffs removed from the Defendant).

Finally, Reyna made another outburst while a recording of his phone calls and messages was being played for the jury, stating, "Is that me on the phone, is that my voice? Is that my voice?" At that point, the record reflects the trial judge motioned for Reyna to be removed from the courtroom.  The record does not show how much longer the recording played, but as soon as the recording finished the trial court adjourned for the day.  Reyna testified during the next day's proceedings, and there is no indication on the record that he was not present in court for the full day.

Reyna's repeated outbursts, as reflected in the record, amount to disorderly and disruptive speech that interrupted his trial, disrespected the judicial system, and sought to interject his views of the evidence into the trial.  We cannot say the trial court abused its discretion in briefly removing Reyna from the courtroom after his third outburst, particularly after repeatedly asking him to refrain from further disruptions and after warning him that he would be removed if there was another outburst. *See Ramirez*, 76 S.W.3d at 129-30 (court did not abuse its discretion in removing defendant for disrupting trial by interjecting alleged facts not in evidence in front of the jury and after warning of possible removal if he continued).  Moreover, even if Reyna's removal was not

warranted, it was so brief, lasting only through the playing of the remainder of the recording, that we can say beyond a reasonable doubt that it did not contribute to Reyna's conviction or punishment, and was thus harmless error. TEX. R. APP. P. 44.2(a); *see Kessel*, 161 S.W.3d at 48 (analyzing constitutional error of defendant's unwarranted removal for harmless error); *Ramirez*, 76 S.W.3d at 130 (even assuming removal was error, it was harmless); *see also Fulmer v. State*, 401 S.W.3d 305, 315-16 (Tex. App.—San Antonio 2013, pet ref'd), *pet. for cert. filed* (assuming defendant's absence from juror qualification process was error, it was harmless). Accordingly, we overrule Reyna's issue challenging his brief removal from the courtroom.

### *Restraints*

Reyna next complains that being restrained by handcuffs in the courtroom violated his constitutional and statutory presumption of innocence. U.S. CONST. amend. V, XIV; TEX. CODE CRIM. PROC. ANN. art. 11.43 (West 2005). As a general matter, a defendant has a right to be tried without the use of physical restraints. *Culverhouse v. State*, 755 S.W.2d 856, 859 (Tex. Crim. App. 1988); *see Deck v. Missouri*, 544 U.S. 622, 630 (2005) (noting that restraining a defendant in the courtroom implicates the presumption of innocence, as well as the right to counsel and the dignity of the judicial process). Because a defendant's fundamental presumption of innocence is impaired when a jury sees him in handcuffs, there must be a showing of "exceptional circumstances or a manifest need for such restraint." *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Such a showing is met where the defendant poses a threat to himself or others. *Id.*; *Funari v. State*, 70 S.W.3d 175, 176 (Tex. App.—San Antonio 2001, pet. dism'd, untimely filed). The trial court need not exhaust less restrictive means before imposing physical restraints. *Funari*, 70 S.W.3d at 177. The record must clearly and affirmatively reflect the trial court's reasons for physically restraining the defendant. *Id.* We review the trial court's decision to restrain a defendant during trial for an abuse of discretion. *Long*, 823 S.W.2d at 282.

Here, it is apparent from the exchange between Reyna and the trial court quoted above that, at some point during trial, Reyna was placed in handcuffs. The record does not reflect when Reyna was handcuffed or whether it occurred in the jury's presence—only that his handcuffs were removed after the court's warning about his disruptive behavior. As for the reasons for restraining Reyna, the trial court's comments to Reyna clearly show that, in addition to his disruptive behavior, the court was concerned that he might hurt someone or himself which is the type of "extraordinary circumstances" that may warrant restraints. *See Long*, 823 S.W.2d at 282; *Funari*, 70 S.W.3d at 177 (record clearly reflected reason defendant was handcuffed in jury's presence in that he stood up and shouted profanities at a witness before being physically restrained by bailiff). Accordingly, we conclude the trial court did not abuse its discretion in handcuffing Reyna based on its concern that he was a threat to himself or others.

## CONCLUSION

Based on the foregoing reasons, we overrule Reyna's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH